# KING IRON BRIDGE AND MANUFACTURING COMPANY *v.* OTOE COUNTY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

Submitted December 22, 1887. — Decided January 30, 1888.

In Nebraska the cause of action upon a county warrant issued by a board of county commissioners does not accrue when the warrant is presented for payment and indorsed " not paid for want of funds," but at a later date when the money for its payment is collected or when sufficient time has elapsed for the collection of the money; and as matter of law it cannot be said that about two years is such a " sufficient time," so as to cause the statute of limitations to begin to run. .

THIS was an action to recover upon two county warrants issued by defendant. Judgment for defendant. Plaintiff sued out this writ of error. The case is stated in the opinion of the court.

*Mr. N. S. Harwood* and *Mr. John H. Ames* for plaintiff in error.

*Mr. John C. Watson* for defendant in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This suit was brought to recover the amount due upon two warrants of the county of Otoe, one dated October 9, 1878, for $1605, and the other, for the same amount, dated January 9, 1879. The petition contains two counts, one of which, upon the warrant dated October 9, 1878, is as follows:

. " For a second cause of action plaintiff says that at Nebraska City, the county seat of Otoe County, Nebraska, on the 8th day of October, 1878, said county being then justly indebted to one Z. King in the sum of $1605.00, which indebtedness was at that time due and unpaid, the board of county commissioners of said county then being regularly in session, did audit, find, allow, adjudge, and determine that there was due the

said Z. King in the premises from said county the sum of
$1605.00 to be paid on account of the said sum of $1605.00;
and thereupon the said board of county commissioners did
allow, draw, and issue to the said Z. King certain warrants of
said county, numbered 622, dated October 9th, 1878, signed by
Frederick Beyschlay, who was then chairman of the said
board of county commissioners, countersigned by C. MacCuaig,
county clerk of said county of Otoe, and attested by the seal
of said county, which commanded said treasurer to pay to said
Z. King, or order, the sum of $1605.00 out of the general fund
and charge to the account of the 'Special Bridge Fund,' a
copy of which warrant, with all the indorsements thereon, is
hereto attached, marked 'Exhibit B.'

"Plaintiff further says that on the 23d day of October, 1878,
said warrant was by said Z. King presented to the county
treasurer and payment thereon demanded.  The same was by
said treasurer indorsed 'not paid for want of funds.'  After-
wards the same said warrant was, on the 26th day of Decem-
ber, 1878, registered for payment, numbered on the register
156.

"Plaintiff further says that subsequent thereto, but prior to
the commencement of this action, the said warrant was by
said Z. King, for a valuable consideration, sold, transferred,
and delivered to the plaintiff, who is the lawful holder and
owner thereof; that no part of said warrant has been paid by
the treasurer of said county or by any one in its behalf, either
to said Z. King or to this plaintiff, or to any person whomso-
ever.

"Plaintiff further says that Z. King was at the time said
warrant was issued and still is a citizen and resident of the
State of Ohio, residing at Cleveland, Ohio, and president of
the plaintiff's company.

"That said defendant has at all times neglected and now
does neglect and refuse, by levy of the taxes or otherwise, to
pay or to provide for the payment of said warrant or any part
thereof, and there is now due the said plaintiff thereon the
sum of $1605.00 and ten per cent interest thereon from the
23d day of October, 1878."

The other count was in the same general form upon the other warrant, but alleging its presentment for payment January 15, 1879.

The answer set up as a defence that the causes of action did not accrue within five years next before the commencement of the suit.

To this a demurrer was filed upon the ground that the answer did not state facts sufficient to constitute a defence, and "that by the statutes of Nebraska and the construction given thereunder by the court of Nebraska the statute does not run against a county warrant."

This demurrer was overruled, and judgment given for the county. To reverse that judgment this writ of error was brought, the amount claimed to be due on the warrants being more than $5000.

The statute of limitations relied on is § 10 of the Code of Civil Procedure, Comp. Stat. 1881, p. 532, as follows:

"Within five years an action upon a specialty, or any agreement, contract, or promise in writing, or foreign judgment."

In Nebraska at the time these warrants were issued the board of county commissioners was the governing body of the county. Gen. Stat. Neb. 1873, p. 232, c. 13, § 2. This board had power "to examine and settle all accounts of the receipts and expenditures of the county, and allow all accounts chargeable against the county; and, when so settled, county warrants may be issued therefor as provided by law." Id. § 14. "The commissioner, whose term of office expires within one year, shall be chairman of the board for that year, and he shall sign all warrants on the treasurer for money to be paid out of the county treasury. Such warrants shall be countersigned by the county clerk, and sealed with the county seal." Id. § 23. "Any person who shall be aggrieved by any decision of the board of county commissioners, may appeal from the decision of the board to the district court of the same county." Id. § 34. "Such clerk shall not issue any county warrant unless ordered by the board of commissioners authorizing the same; and every such warrant shall be numbered consecutively as allowed from the first day of January to the thirty-first day

of December in each year, and the date, amount, and number of the same, and the name of the person to whom it is issued, shall be entered in a book called 'Warrant Book,' to be kept by the clerk in his office for that purpose." Id § 40. "All warrants issued by the board of county commissioners shall upon being presented for payment, if there are not sufficient funds in the treasury to pay the same, be indorsed by the treasurer, 'not paid for want of funds,' and the treasurer shall also indorse thereon the date of such presentation and sign his name thereto. Warrants so indorsed shall draw interest from the date of such indorsement, at the rate of ten per cent per annum until paid." Id. § 54.

Another statute provided that "all warrants upon the state treasurer, the treasurer of any county, or any municipal corporation therein, shall be paid in the order of their presentation therefor." Gen. Stat. Neb. 1873, 891, c. 65, § 1. "It shall be the duty of any such treasurer, upon the payment of a fee of ten cents by the holder of any warrant, or by any person presenting the same for registration, in the presence of such person, to enter such warrant in his 'warrant register,' for payment in the order of presenting for registration, and, upon every warrant so registered, he shall indorse 'registered for payment,' with the date of such registration, and shall sign such indorsement: *Provided*, That nothing in this act shall be construed to require the holder of any warrant to register the same, but such warrant may be presented for payment and indorsed 'presented and not paid for want of funds,' and shall draw interest from the date of such presentation, as now provided by law." Id. § 3.

In a suit upon a county warrant issued under statutes not materially different from these the Supreme Court of Nebraska, while holding that a statute of limitations substantially like that above quoted applied to actions where counties or other municipal corporations were parties as well as to those between private persons, said: "But these warrants do not, nor was it the intention of the legislature that they should, fall within the operation of this act. When a demand or claim against a county is presented to the commissioners for settlement, they

hear the proofs and determine whether it is one which the county is bound to pay, and the amount due thereon. In this they act judicially, and, within the scope of the authority conferred on them, their decision is a judgment binding upon the county. If they decide in favor of the claimant, an order is drawn on the treasurer for the amount, designating the fund out of which it is to be paid. If there is money in the treasury belonging to the fund against which it is to be drawn, not otherwise appropriated, it is the duty of the treasurer to pay the warrant; but if there be none he must indorse upon it the fact of its presentation, and non-payment for want of funds, and the holder must wait for his money until such time as it can be raised through the means which the legislature provides for the collection of revenue. Nor can any action rightfully be brought on such warrant until the fund is raised, or at least sufficient time has elapsed to enable the county to levy and collect it in the mode provided in the revenue laws." Then, after referring to certain statutes, which it was thought showed that the limitation act did not apply to such warrants, the opinion proceeds: "From these as well as numerous other enactments of the legislature that might be cited, I have reached the conclusion that the plea of the statute of limitations cannot be successfully made against these warrants, and that whenever it can be shown that the funds have been collected out of which it can be paid, or sufficient time has been given to do so in the mode pointed out in the statutes, their payment may be demanded, and, if refused, legally coerced. . . . Whoever deals with a county and takes in payment of his demand a warrant in the character of these, no time of payment being fixed, does so under the implied agreement that if there be no funds in the treasury out of which it can be satisfied, he will wait until the money can be raised in the ordinary mode of collecting such revenues. He is presumed to act with reference to the actual condition of the laws regulating and controlling the business of the county. He cannot be permitted, immediately upon the receipt of such warrant, to resort to the courts to enforce payment by judgment and execution, without regard to the condition of the treasury at

the time, or the laws by which the revenues are raised and disbursed." *Brewer* v. *Otoe County*, 1 Nebraska, 373, 382, 384.

We have not been referred to any case in Nebraska which qualifies this decision, and it stands to-day, so far as we have been advised, as the settled law of that State. It was recognized and followed by this court in *Chapman* v. *County of Douglass*, 107 U. S. 348, 354, 359. The petition in this case appears to have been drawn with express reference to its rulings and with a view of showing that the action could be rightfully brought, as the county had neglected for so long a time to levy and collect the necessary taxes to provide a fund for the payment of the warrant. The purpose of the suit was to coerce payment, as a sufficient time had already been given to enable the county to do so voluntarily in the mode pointed out in the statutes.

The record as printed does not show when the suit was begun, but it is stated in the brief of the counsel for the county to have been November 10, 1885. This was about seven years after the warrants were indorsed " not paid for want of funds." According to the rule established in *Brewer* v. *Otoe County*, the cause of action did not accrue when the payment was refused, " but only when the money for its payment is collected, or time, sufficient for the collection of the money has elapsed." We cannot say, as matter of law, that this was more than five years before the commencement of the action.

It follows that the court erred in overruling the demurrer to the answer, and for that reason

*The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.*