## CITY OF SULPHUR v. STATE ex rel. LANKFORD, Bank Com'r.

No. 7092—Opinion Filed Oct. 10, 1916.

Rehearing Denied Jan. 30, 1917.

(162 Pac. 744.)

1. **Municipal Corporations — Warrants — Statutes—Validity.**

Article 7, c. 14 (sections 754—769), of the Compiled Laws of 1909, insofar as it attempts to prohibit the transfer of surplus funds, is repugnant to section 9, art. 10, of the Constitution of the state of Oklahoma. and therefore void.

2. **Municipal Corporations — Warrants — Presentment for Payment.**

In a suit against a municipality upon warrants theretofore issued by it, where the municipality is denying liability, it is unnecessary to present the warrants for payment before suit can be maintained thereon, as the law will not require one to do a useless thing.

3. **Evidence—Validity of Warrants — Presumptions.**

It is a presumption of law that all public officers perform their duty, and in the ab-

sence of clear proof to the contrary this court will refuse to hold that they did not do so in issuing warrants for claims against municipalities.

### 4. Limitation of Actions—Running of Statute—Municipal Warrants.

Where a warrant is issued by the officers of a municipal corporation, and the creditor accepts the same, relying on the ordinary mode of disposition to pay said obligation, the corporation cannot be heard to say, in an action to enforce the payment thereof, that the same is barred by the statute of limitation without first pleading and proving that it has provided a fund for the payment of such indebtedness.

### 5. Property—Presumption of Ownership — Personalty.

As a general rule in the absence of evidence to the contrary, a presumption of ownership arises from the possession and control of personal property.

### 6. Municipal Corporations — Warrants—Issuance—Validity.

A municipal warrant is prima facie evidence of the validity of the claim for which it was issued, and if in an action instituted by the owner and holder thereof the municipality asserts as a defense a violation of some constitutional or statutory provision, the burden of proof is upon the municipality to clearly establish by competent evidence that at the time the debt was created, for which said warrants were issued, the governing body of the municipality violated the provision of the Constitution or section of the statute relied upon.

(Syllabus by Hooker, C.)

Error from District Court, Murray County; R. McMillan, Judge.

Action by the State, on the relation of J. D. Lankford, Bank Commissioner of the State of Oklahoma, against the City of Sulphur. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Walter E. Latimer, E. W. Fagan, and Ira M. Roberts, for plaintiff in error.

H. W. Broadbent, for defendant in error.

Opinion by HOOKER, C. This action was filed to recover judgment against the city of Sulphur upon 213 warrants alleged to have been executed and delivered by said city since statehood to various parties, and subsequently assigned to the Security State Bank of Sulphur, Okla., and afterwards transferred by said bank to the defendant in error. The City seeks to avoid liability thereon for the following reasons, to wit:

First. Said warrants were not drawn as provided by section 764 of the Compiled Laws of 1909, which provides that:

"All warrants issued by any city upon the city treasurer after the second Monday in July of any year shall be drawn upon one of the special funds * * * created and levied for that year and such warrants shall designate the fund upon which it is drawn and shall state upon its face the amount levied and appropriated to the fund upon which it is drawn and the amount of such funds at the time expended, and the amount remaining in such fund."

Second. Said warrants were never presented to the city treasurer for payment before the institution of the suit.

Third. The evidence shows that certain of the warrants were issued for an increase in salary during the term for which said officers were elected.

Fourth. Said warrants were not ordered issued by the city council.

Fifth. Some of said warrants were in excess of $500, and that under the provision of section 647, Compiled Laws of 1909, it was in violation of law for the city council of the city of Sulphur, Okla., to purchase either real or personal property at one time, where the value thereof exceeded $500, without authority of a majority of the electors of said city authorizing the same.

Sixth. Said warrants were barred by the five-year statute of limitations before suit was filed.

Seventh. The evidence does not establish that plaintiff was the owner of the warrants sued upon.

Eighth. The debts contracted exceed the income and revenue provided for such year without the assent of three-fifths of the voters thereof voting at an election held for that purpose.

Ninth. The indebtedness contracted evidenced by said warrants exceeds 80 per cent. of the tax levied for city expenses during the current years.

This court in the case of State Bank of Miami v. City of Miami, 43 Okla. 811, 144 Pac. 598, said:

"Section 9, art. 10, of the Constitution contemplated a lump levy for all purposes, and the provisions of chapter 14, art. 7, Comp. Laws 1909, in so far as they attempt to prohibit the transfer of surplus funds to a depleted fund of the same year, are repugnant to the Constitution."

And without extended argument it is sufficient for us to say that under the authority given the position of the plaintiff in error upon the proposition that each warrant must show the fund upon which it is drawn,

etc., as provided by section 764 of the Compiled Laws of 1909, is not tenable.

We are unable to see how the contentions of the city that the plaintiff is not entitled to maintain this action because a few of the warrants that were issued were not presented to the city for payment can be maintained. The city is here denying its liability and seeking to escape the payment of these warrants upon every defense of which it can avail itself. Most of these warrants were presented and payment refused. The claims for which these warrants were issued were presented to the city council in the manner and form provided by the statute, and in the absence of a showing upon the part of the city to the effect that it had made some effort for these warrants, by creating a fund therefor, that it was necessary for the defendant in error to have presented said warrants to the city treasurer before recovery could be had in this case.

In the case of Connersville v. Hydraulic Co., 86 Ind. 184, it is said:

"In a suit upon a city order, it is not necessary, to entitle the holder thereof to recover, that he should show that the city treasurer had funds with which to pay it, or that he indorsed it 'Not paid for want of funds.'

"The law will not require any party to do a useless thing and the evidence and the pleadings here conclusively justify the opinion that it would have been a very futile effort upon the part of the defendant in error to have presented these warrants to the city for payment, and in this case it is held that a demand was not essential to the maintenance of this action."

The city urges that recovery should not have been had here upon some of the warrants presented by Kendall and others for salaries which were increased during the term of office for which said officials were elected. The evidence here does not sustain this fact, for it appears that in March, 1907, the officials of the city attempted to pass an ordinance reducing the salaries, but on account of the failure on their part to comply with the law in force in the Indian Territory at that time, and by reason of the failure of said ordinance reducing said salaries to receive the proper number of votes in favor thereof, the said ordinance did not become effective and the officials elected in April, 1907, continued to draw their salaries as was provided by the ordinance prior to the attempted passage of the reducing ordinance in March, 1907. It appears that this question was presented by a test suit filed by one Bos-

well before the United States commissioners, and by common consent the opinion of the commissioner that the officials of said city were entitled to salaries as evidenced by the warrants issued was accepted as a true rule of law applicable thereto, and from an examination of the law and the evidence, the opinion of the United States commissioners was right. These officials to whom the warrants involved here were issued for salaries were elected to office in April, 1907, and they were entitled to such compensation as the law in force at the time of their election authorized them to receive. The induction of statehood did not change nor alter their compensation as they were entitled to draw the same salary until the next election after statehood which was April, 1909, for the Constitution of the state of Oklahoma prohibited any change during the term of office for which they were elected. The trial court determined that the ordinance reducing the salaries of the city officials was improperly passed, and in view of the fact that there is evidence and the inferences to be drawn therefrom support the view of the trial court upon the conclusion reached by it, we cannot disturb the judgment of the lower court.

The city records relied upon here to establish a defense were in such condition that it can hardly be said that they import absolute verity or correctly show the proceedings of the city council made at the time the various claims sued upon were presented and allowed by the governing body of the city. A part of the ordinance book had been torn out and the city records in some instances had been destroyed and burned, and had not been kept, nor preserved in the manner contemplated by law, so as to give to them the significance which is contemplated by records of that character. No one in this case testified that the trial court had before it all of the city records, but upon the contrary it affirmatively appears that it did not. The presumption of law is that the officials of the city performed their duty, and in the absence of a clear showing to the contrary, we are unable to say that they did not. However, the owners of these warrants cannot be prejudiced in their property rights, nor the validity of the warrants destroyed where there can be no question but that the city received value therefor by a failure of the city officials to perform their duties in making and preserving a record in the proper book of the proceedings of the city council.

This court in Marth v. City of Kingfisher, 22 Okla. 606, 98 Pac. 438, 18 L. R. A. (N. S.) 1238, said:

"Section 418, Wilson's Statute of 1903, provides 'that the city clerk of cities of the first class shall keep a journal in which shall be recorded all proceedings of the city council.' And section 464 of the same statute provides that 'the city clerk shall keep an "Ordinance Book" in which he shall enter at length in a plain and distinct handwriting, every ordinance in force in said city at the time this act takes effect * * * and every ordinance hereafter enacted immediately after its passage, * * *' but the recording of an ordinance of a municipal corporation is not a prerequisite to the validity of any such ordinance unless it is made so by the charter of such corporation or the statute under which it is organized and acts. * * * The statute of Oklahoma does not make it essential to the validity of an ordinance that it be recorded, and the requirements of the statute * * * is merely directory."

As stated the presumption of law is that the officials of the city of Sulphur performed their duty, and that in the issuing of the warrants involved here, that these officials performed every duty imposed upon them by the statute and the law of the state of Oklahoma. This presumption has not been overcome by the evidence introduced here upon the part of the city and these warrants cannot be held invalid for these reasons. See Hubbell v. Hutchinson, 64 Kan. 645, 68 Pac. 52; Howard v. City, 33 Wis. 309; Board v. Oliver, 7 Colo. App. 515, 44 Pac. 362; Board v. Sherwood, 64 Fed. 103, 11 C. C. A. 507. See, also, School District v. Western Company, 13 Wyo. 304, 80 Pac. 155, wherein it is held:

"Nor is it invalid by reason of the fact that the minutes of the board contained no record of the presentation of the claims, its audit and allowance, or of an order for the issuing of the warrants"

The city in its answer here attempts to plead the statute of limitation in the following language, as shown on page 445 of the case-made:

"That several of said warrants are barred by the statute of limitations."

In our judgment this is not a sufficient pleading upon which to base the defense of the statute of limitations. This court in the case of Board v. Clarke et al., 12 Okla. 214, 70 Pac. 212, said:

"In our opinion where a warrant is issued by the officers of a municipal * * * corporation and the creditor accepts the same, relying on the ordinary modes of taxation to pay said obligation, the corporation cannot be heard to say, upon an action to enforce the payment thereof, that it is barred by the statute of limitations without first pleading

and proving that it has provided a fund for the payment of such indebtedness."

This doctrine is likewise approved in Robertson v. Blaine County, 90 Fed. 63, 32 C. C. A. 512, 47 L. R. A. 459, and Barnes v. Turner, 14 Okla. 287, 78 Pac. 108, 10 L. R. A. (N. S.) 478, 2 Ann. Cas. 391, and authorities cited therein. However, waiving the question of pleading, the evidence here does not disclose that the city is entitled to be relieved from liability herein on account of the statute of limitations.

This court said in the case of Barnes v. Turner, supra, that:

"The statute of limitations is what is known in law as a statute of repose. It is a statute enacted as a matter of public policy to fix a limit in which an action must be brought, or the obligation will be presumed to have been paid. The statute is intended to run only against those who are neglectful of their rights, and fail to use reasonable and proper diligence in the enforcement thereof. They are based upon the presumption of law that from the lapse of time it is fair to presume that the debt has been paid. In this case the warrants show upon their face that they were issued by what purports to be the city council, and signed by what purports to be the mayor, and attested by what purports to be the clerk; that they are evidence of indebtedness, and are entitled to be accepted as evidence of indebtedness. * * * Now, when did, under these warrants, the right to demand payment thereof accrue? Was it immediately upon the issuing of the warrants, or was it when the fund from which said warrants were to be paid was in the hands of the proper officer for payment thereof. The payment of these warrants did not depend entirely upon the action of the holders thereof, but depended upon some affirmative action * * * of the officers of the city. * * * Now can the officers of the city, when steps are taken which are necessary preliminaries to the collection of these warrants, be heard to take advantage of their own neglect of duty, by saying that because we have not performed the duty as the law required of us and made the necessary levy to provide the fund for the payment of these warrants, that consequently, on account of our neglect, the statute of limitations has run against the holders of these warrants so as to prevent their collection? We think this case comes clearly within the decision of this court in the Greer County Case [citing Greer County v. Clarke, 12 Okla. 197, 70 Pac. 206; Robertson v. Blaine County, 90 Fed. 63, 32 C. C. A. 512, 47 L. R. A. 459; Hubbell v. Hutchinson, 64 Kan. 645, 68 Pac. 52.] * * * From the foregoing it will be seen that the reason assigned by the courts in refusing to permit the statute of limitations to be pleaded as a bar to recovery, in cases of this character, arises out of the fact that the defendants

were, under the law, required to do some affirmative act; that is, to levy a tax creating a fund for the payment of indebtedness and the taking up of warrants, and if the warrant holder failed to present his warrant and secure the money thereon, the statute of limitations could be successfully interposed; but so long as there remained, under the law, some act to be performed by the municipality, such municipality has not performed its duty under the law, and the courts will not and ought not to permit them to interpose their failure to act as by law required as a defense to the payment of a just obligation."

As stated, waiving the question of pleading of the statute, the evidence here does not entitle the city to rely upon the statute of limitations as a bar to recovery here, and we must therefore hold that the same is not a defense to the cause of action sued upon here.

We might call attention to sections 398 and 399 of the Compiled Laws of 1909, which provide that it shall be the duty of the treasurer of every municipality in this state to keep a record of the warrants presented to him for payment and indorsed, "Not paid for want of funds." And further providing that such warrants shall be paid in the order of presentation and registration, and that when sufficient money is on hand with which to pay said warrant, due notice thereof shall be given in order that the holder of said warrant may have an opportunity to present the same for payment. It is not claimed that these sections of the statute were complied with or that any fund was ever provided by the city out of which these warrants could have been paid, and said warrants being valued upon their face purported to have been issued by the city council, properly signed by the mayor, attested by the clerk and bearing the seal of the city attached thereto, that create the prima facie evidence of an indebtedness which, until something to the contrary is shown, would require the city, before they can be relieved by a statute of limitations, to show that it has complied with the law as stated above, and that not having been done here, we must hold that the plea of the statute of limitations is not available in this case.

As to the ownership of these warrants, the finding of the lower court, that the defendant in error was owner thereof, is supported by the evidence and the inferences to be drawn therefrom. As a general rule, in the absence of evidence to the contrary, a presumption of ownership arises from the possession and control of the property.

The evidence here discloses that the Security State Bank of Sulphur, at the time of its liquidation, owned these warrants, and the witness Norfleet testified that he was in the employ of the state banking board, and was at the time said warrants were acquired by the banking board from said bank, and that said warrants were in the control and possession of the banking board of the state. No evidence being introduced to the contrary, the lower court was justified in finding that the banking board was the owner of the warrants in question.

It is admitted here that the warrants involved on their face purported to have been issued by order of the city council; they bear the signature of the mayor, attested by the clerk, and have the seal of the city attached. The evidence, save in two small instances, justifies the conclusion that the city received value in payment of which these warrants were issued. The presumption of law must follow that all these warrants evidenced valid claims against the city.

This court in Van Arsdale & Osborne v. School District, 23 Okla. 894, 101 Pac. 1121, said:

"A school district warrant is prima facie evidence of the validity of the claim for which it was issued. Hence, in an action by the owner and holder thereof, where the only defense relied upon to defeat its payment is that the school district was indebted beyond the federal limit, it is only necessary for the plaintiff, in order to make a prima facie case, to introduce the warrants, properly executed, and to prove that he is the owner and holder thereof. The burden of proof is then upon the school district to clearly establish by competent evidence that at the time the debt was created for which the warrants were issued it had exhausted its debt creating power by reason of the federal inhibition." (See authorities cited thereon.)

Likewise this court in the case of Board v. Sauer, 8 Okla. 235, 61 Pac. 367, said:

"The warrant sued upon in this action was prima facie evidence of the validity of the claim for which it was issued. The presumption of law is that the warrant was issued for legitimate county purposes, and that it was not issued in contravention of the federal limitation. But it was competent for the county to plead and prove as a defense to the action that its indebtedness was in excess of the federal limit, at the time the debt was created, or that the warrant was issued for an illegal corporate purpose."

Also in the case of Board v. De Lana, 8 Okla. 213, 57 Pac 162, this court says:

"It is a well-settled principle of law in this class of cases that it is presumed that, where the officers of a municipality issue their obligations, such obligations are issued for law-

ful corporate purposes, and that they acted clearly within the scope of their powers. It is also a well settled principle of law governing this class of cases that where a municipality seeks to avoid the payment of its obligations on the ground that, at the time the debts were incurred and the obligations issued, the municipality was indebted beyond the constitutional or federal limit, the burden of proof is upon the municipality to establish such facts."

Judge Dillon in his work on Municipal Corporations, vol. 2 (5th Ed.) sec. 855, said:

"County and city orders signed by the proper officers are prima facie binding and legal. These officers will be presumed to have done their duty, such orders make a prima facie cause of action, and impeachment must come from the defendant."

See authorities cited at note 1, p. 1294, vol. 2, 5th edition, Dillon on Municipal Corporations.

These warrants upon their face were valid obligations of the city. The petition stated a cause of action thereon against the city, and the warrants were properly admitted in evidence under the allegations of the pleadings.

As to the defenses interposed here by the city to the effect that the city could not contract in any year a debt in any manner or for any purpose to an amount in excess of its income and revenue provided for such year, without the assent of three-fifths of the voters thereof as provided by section 26, art. 10, of the Constitution of the state, nor could the city council issue any certificate of indebtedness in any form in payment of any account or claim against the city, or make any contract or incur any indebtedness against the city in excess of 80 per cent. of the tax levied for city expense during said year as provided by section 765 of the Compiled Laws of 1909, new section 607 of the Revised Laws of 1910. These were affirmative defenses, and in order to defeat the collection of these warrants which were prima facie valid, it was incumbent upon the city to affirmatively show by the evidence here that this provision of the Constitution or this section of the statute had been violated with reference to the indebtedness represented by the warrants involved in this case.

We must bear in mind that this court in the case of Buxton, etc., Co. v. Board of Com'rs of Craig Co., 53 Okla. 65, 155 Pac. 215, speaking as to the time when these provisions of the law should be applied to an indebtedness upon the part of the county or city, said:

"It is quite clear to us that the foregoing transactions do not constitute a violation of section 26, article 10, of the Constitution. The county did not become indebted in any manner for any purpose for any amount exceeding the income and revenue provided for the fiscal year during which the supplies were furnished. The debt was created at the time the contract for the supplies was made, and not when the claim therefor was presented for payment. * * * The subsequent exhaustion of the funds of the county by the payment of invalid claims could not possibly have the effect of invalidating an indebtedness which was perfectly legal at the time the obligation was created. Clearly it was the intention of the people that the constitutional 'brake upon extravagance' should be applied before the county is allowed to become indebted, not afterwards. The plaintiff herein was under no necessity to present its claim immediately for payment. By section 1570, Revised Laws of 1910, it could have presented it any time within two years after the same accrued. The county commissioners knew a valid indebtedness had been incurred, and they should have made provision for its payment. According to the agreed statement of facts, there was ample money in the supply fund for that purpose at the time the county became indebted for the supplies furnished, and the amount of this claim should have been laid aside for its payment. In other words, the 'brake' should have been applied by the board of county commissioners before the county was allowed to become indebted in excess of its income and revenue for that year. But if, as in this case, the county commissioners do allow the county to become indebted in excess of its income and revenue, contrary to the constitutional limitation, the money in the treasury of the county available for the payment of the valid indebtedness of the county should not be applied in payment of the invalid claims. An ordinary debtor may incur indebtedness in excess of his ability to pay, and he may pay them in such order as he chooses, but a county cannot incur valid obligations exceeding in any one year the income and revenue provided for such year without the assent of three-fifths of the voters thereof. The moment it oversteps that mark, its contract ceases to be valid, and it cannot pay the claim based upon such illegal contract. Indeed it is under the same legal obligation not to pay them as it is to pay its legal and valid obligations. * * * Parties entering into contracts with the county are bound to take notice of the constitutional limitation and to ascertain as to what extent the revenues have been appropriated to existing liability; but they are not bound to anticipate, and no amount of prudence or foresight could enable them to foresee, that illegal claims would be incurred by officers willing to violate the Constitution. In our judgment, the sole question herein is whether the indebtedness was valid at the time it was incurred.

"In determining the validity of such indebtedness, it will, of course, always be necessary to inquire whether, at the date of its assumption, there were unappropriated revenues to meet it, because, if there were not, there would be no liability resting upon the county. and the claimant would not be entitled to judgment. But if, at the time the contract was made, the indebtedness created thereby, together with all previous valid indebtedness, did not exceed the income and revenue of the county provided for such year, the claimant will be entitled to judgment for the amount of his claim."

The record here in most instances is entirely silent as to the date of the creation of the indebtedness evidenced by the warrants sued upon in this case, and in the absence of a showing as to the condition of the unappropriated revenues of the city at the time of the creation of the indebtedness represented by said warrants, we are unable to determine whether this provision of the Constitution or this section of the statute has been violated so as to destroy the legality of the warrants involved. In determining these questions we must also remember that an indebtedness for public utilities is not within the inhibiton of section 26, art. 10, Constitution, for this court in a number of cases, notably, Bryan v. Menefee, 21 Okla. 1, 95 Pac. 471, City v. Edwards, 28 Okla. 780, 115 Pac. 1108, and State v. Millar, 21 Okla. 448, 96 Pac. 747, has held that a city by virtue of section 27, art. 10, of the Constitution may become indebted in a larger amount than is contemplated by section 26, art. 10, Constitution, in construing or providing public utilities, and, that being true, an indebtedness created therefor and warrants issued in payment thereof should not be considered a violation of the provisions of the Constitution or section of the statute mentioned above.

The evidence here attempting to show a violation of this provision of the Constitution and statute upon the part of the city is very uncertain and indefinite, and the trial court after full investigation thereof, found against the city, and we cannot disturb that finding here.

It is further urged that the section of the statute which prohibits the making of any contract in excess of $500 was violated by the city here, but the evidence does not justify or uphold such contention, for it appears that the warrants in excess of $500 were issued in payment of many claims, all of which were less than $500 in amount.

The judgment is affirmed.

By the Court: It is so ordered.