## SAPPINGTON, County Treas., v. BOARD OF COM'RS OF JEFFERSON COUNTY et al.

No. 18637.   Opinion Filed Nov. 13, 1928.

Rehearing Denied Jan. 8, 1929.

Harper & Dillard, for plaintiff in error.

Robert R. Pruet, for defendants in error.

BENNETT, C. Plaintiff in error was plaintiff, and defendants in error were defendants in trial court, and they will be referred to as such plaintiff and defendants as they there appeared.

May 25, 1926, plaintiff filed suit in district court of Jefferson county, Okla., against defendants, alleging, in substance, that plaintiff is county treasurer of Jefferson county, Okla. and is custodian of the sinking funds belonging to the various common school districts of said county with exclusive power to control and invest the same; that defendants Tom Dorsett, D. A. Cathy and A. L. Duncan are county commissioners of said county, and, as such, are ex-officio officers of the various townships of said county, with control over disbursements of the various funds of said county, and that Patterson township is a township of said county; that during the two fiscal years 1918-19 and 1919-20, the then county treasurer of said county invested part of the sinking funds of the common school districts of said county in certain township warrants, numbered 18, 20, 24, and 29 and 3 to 43, inclusive. The first four warrants were purchased in the fiscal year 1918-19, the remainder in the fiscal year 1919-20, and all of said warrants were issued upon verified claims against estimates which had been approved and allowed for said Patterson township for the said respective fiscal years. There were at the time of issuance unexpended balances in said township fund. Tabulated statements showing in detail the number of said warrants, their total value, accrued interest thereon, the bonded indebtedness of the township, the judgments and other amounts due thereby for said fiscal years, were attached to and made parts of the petition and marked exhibits "A" and "B"; that the total amount due on the said first four warrants, principal and interest, was $103 53, and the amount, principal and interest, due on the remaining warrants was $2,265.11.

Defendants filed a general denial, and also special demurrer, on the ground that the claims of plaintiff were barred by the statute of limitations. The court overruled defendants' demurrer, and thereafter they filed answer, which is first a general denial, except an admission that the parties above named are officers of Jefferson county, as alleged in the petition, and that for each of the two fiscal years mentioned, an estimate was made for said Patterson township; that said estimate was approved, and a levy made to raise the fund, and that by reason whereof a fund sufficient was provided and paid in and to the treasurer to pay said warrants, but that said fund so provided and raised was diverted to another and different purpose; that more than five years have elapsed since the making of said levy and collection, and since said warrants were issued and registered, and that, if said warrants were ever a valid indebtedness, which the defendants do not admit, they are now barred by the statute of limitations.

By agreement, the cause was tried to the court without a jury, and upon the facts disclosed in the following stipulation:

"It is stipulated and agreed as follows:

That W. C. Sappington is the duly elected, qualified and acting county treasurer of Jefferson county, Okla., and as such is the officer having the care and custody of the funds of the common school district of Jefferson county, Okla.

"That for the fiscal year 1918 and 1919, an estimate was made and approved for said township in the sum of $2,775, and against said estimate warrants were issued in the sum of $2,773.75.

"That warrant No. 18, registered 9-2-08 for $4; warrant No. 20, 9-2-18, $11.81; warrant No. 24, 10-7-18, $12, and warrant No. 29, $36 95, registered 11-4-1918, are at this time held as investments in the common school sinking fund for said Jefferson county and have never been retired.

"That for the fiscal year 1918 and 1919 for said township taxes have been collected in the sum of $3,061.96, and of this amount $3,005.27 was collected prior to January 1st, 1920.

"That for the year 1918-1919, there were issued warrants numbers 1 to 74, inclusive, and that warrants issued subsequent to the above-mentioned warrants and registered subsequent thereto were paid in amounts greater than the amount of the warrants above mentioned.

"Second Cause of Action.

"That for the fiscal year 1919 and 1920, an estimate was made and approved for said township in the sum of $2,627.33 and against said estimate warrants were issued in the sum of $2,613.58.

"That warrants Nos. 3, 13, 14, 16, 19, 21, 22, 23, 26, 29, 30, 34, 35, 36, 39, 41, 42, 43, as shown by exhibit 'A' attached hereto in the total sum registered in the day and dates shown by exhibit are at this time held as investments in the common school sinking fund for said county, and have never been retired.

"That for the year 1919-1920 taxes have been collected in the sum of $2,947.63, and of this amount $2,800.47 was collected by July 1, 1920.

"That for said year there were issued 71 warrants and warrants 45 to 71. inclusive, were registered subsequent to those pleaded in this action and said warrants mentioned were not paid: that the total amount of warrants issued subsequent and paid prior thereto was $————.

"That the financial statement of said township filed at the end of the fiscal year 1919-1920 shows a surplus of $1,200.89."

Upon consideration of the pleadings and stipulation, the court found for defendants upon the ground that plaintiff's causes of action were barred, and plaintiff, after his motion for new trial was overruled, brings the case here for review.

It will be observed that these warrants were issued to individuals and later purchased by the county, and that the validity of the warrants when issued is not questioned. It clearly appears that proper levies were made and sufficient taxes thereunder collected to pay off said warrants, but that the money, when raised, was not used for that purpose, but that warrants subsequent in date and in an amount in excess of that claimed by plaintiff were actually paid.

It further appears from the admitted facts that more than five years elapsed from and after the collection of these moneys by the county treasurer before the institution of this action.

As we see it, there is presented for our determination one proposition of law: Did the statute of limitations bar plaintiff's action under the facts? The determination of this main proposition presents to us the following questions: (1) Does the statute of limitations run against municipal warrants? (2) If so, when does the statute of limitations begin to run? (3) Is a township warrant purchased by a county out of its sinking fund and sought to be enforced by it subject to the statutes of limitations?

Taking the above inquiries in their order: Wood on Limitations (4th Ed.) vol. 1, par. 53, says:

"The maxim nullum tempus occurrit regi only applies in favor of the sovereign power, and has no application to municipal corporations deriving their powers from the sovereign, although their powers in a limited sense are governmental. Thus the statute runs for or against towns and cities (Citing Cincinnati v. Evans, 5 Ohio St. 594; Lane v. Kennedy, 13 Ohio St. 42; Cincinnati v. First Presbyterian Church. 8 Ohio St. 298. 32 Am Dec. 718: Conyngham School Dist. v. Columbia Co. (Pa.) 6 Leg. Gaz. 26; School Directors of Georges, 50 Mo. 194; Kennebunk v. Smith, 21 Me 445: Gibson v. Chouteau. 80 U. S. (13 Wall. 92, 20 L. Ed. 524; City of Alton v. Illinois Trans. etc., Co., 12 Ill. 38, 52 Am. Dec. 479) and also for or against counties (citing County of St. Charles v. Powell. 22 Mo. 525, 66 Am. Dec. 627: Evans v. Erie County, 66 Pac. 222; Baker v. Johnson Co., 33 Iowa 151; Armstrong v. Dalton, 15 N. C. (4 Dev.) 568: County of Lancaster v. Brinthall, 29 Pa. 38) in the same manner as it does for and against individuals." (Citing Boone County v. Burlington & Mo. River R. Co., 139 U S. 684. 693. 11 Sup. Ct. 687. 35 L. Ed. 319: Hammond v. Shepard. 186 Ill. 235;

Arapahoe Village v. Albee, 24 Neb. 242, 38 N. W. 737, 8 Am. St. Rep. 202, and note.)

In 17 R. C. L. p. 958, par. 325, the author says:

"It has even been asserted that the statute of limitations does not apply to actions on warrants against counties. On the other hand, it has been pointed out that the statute should be considered a complete defense to an action on a school district warrant brought more than the statutory period after it was due, because if this were not so, warrants might be fraudulently issued by the authorities of a municipal corporation, and held for a considerable number of years, and then presented for payment, when the evidence of their fraudulent character had become obscure or inaccessible. Hence, the opinion has been expressed that the ends of justice are better subserved by placing individuals and municipal corporations on the same plane and governed by the same law of limitations." (Citing Arapahoe v. Albee, 24 Neb. 242, 38 N. W. 737, 8 A. S. R. 202.)

"County or town warrants * * * are governed as to the period of limitations by the statute governing other instruments for the payment of money. * * *" 37 C. J. p. 755, and cases cited.

Authorities to the same effect might be multiplied, but we think the doctrine announced above is supported by the great weight of authority.

As to the second inquiry as to when the limitation begins to run, the doctrine is negatively stated in Wood on Limitations (4th Ed.) vol. 1, p. 697, par. 122c (6) as follows:

"Limitation does not begin to run against a suit to enforce payment of county warrants, which, under the statute, are payable in the order of their registration, subject to a provision that such warrants shall be receivable for taxes, until there is sufficient money in the treasury applicable thereto to pay such warrants. (Citing E. H. Rollins & Sons v. Board of Com'rs of Grand County, 199 Fed. 71, 117 C. C. A. 583. And see Apache County v. Barth, 6 Ariz, 13: judg. rev'd., 177 U. S. 538, 20 Sup. Ct. 718, 44 L. Ed. 878; Barnes v. Turner, 14 Okla. 284, 78 Pac. 108, 10 L. R. A. (N. S.) 478; Aff'd. Duke v. Turner, 204 U. S. 623, 27 Sup. Ct. 316, 51 L. Ed. 652; Forbes v. Board of Com'rs of Grand County, 23 Colo. 344, 47 Pac. 388; Bacon v. Dawes County, 66 Neb. 191, 92 N. W. 313).

Limitations do not begin to run against warrants issued by a municipal corporation payable out of a special fund to be created **until the fund has been cheated, and there is sufficient money in it with which to pay the warrants."** (Citing Rogers v. City of Omaha, 82 Neb. 118, 117 N. W. 119; Hubbell v. City of South Hutchinson, 64 Kan. 645, 68 Pac. 52.)

In the case of Board of County Commissioners of the County of Greer v. Clarke & Courts, 12 Okla. 197, 70 Pac. 206, the court, in the opinion, quotes from the case of King Iron Bridge & Mfg. Co. v. Otoe County, 124 U. S. 459, Chief Justice Waite delivering the opinion, as follows:

"According to the rule established in Brewer v. Otoe County, the cause of action did not accrue when the payment was refused, 'but only when the money for its payment is collected, or time sufficient for the collection of the money has elapsed..' We cannot say, as a matter of law, that this was more than five years before the commencement of the action."

And also from the case of Robertson v. Blaine County, 90 Fed. 63, and from the case of Hubbell v. City of South Hutchinson, 68 Pac. 52, where it was held that the statute of limitations will not start to run in favor of a city on its outstanding warrants until it has money in its treasury to satisfy such obligations. In the course of opinion in the Hubbell Case, the court says:

"This action was based upon certain written obligations, and, in the absence of the intervening circumstances would become barred within five years from the date of their issuance. It is the settled law of this state, however, that the statute of limitations does not run in favor of a municipal or quasi municipal corporation upon its outstanding obligations until the corporation has provided a fund with which payment thereof may be made."

Judge Hainer, for the Oklahoma court, in the Board of County Commissioners of Greer County Case, supra, said:

"We concur in the views announced in these decisions."

The case of Barnes, Mayor v. Turner, 14 Okla. 284, 78 Pac. 108, quotes largely from the Greer County Case, supra, and refers to many of the cases therein discussed, and follows the principle set out above and quotes from the case of Freehill v. Porter (Cal.) 4 Pac. 646, as follows:

" 'By law, it was the duty of the city to make provision for the payment of the bonds and coupons, according to the statute under which they were issued, and, by omitting to perform such duty, the city could not create the defense of the statute of limitations. Not until the funds were in the treasury, properly applicable, would the statute begin to run; not until that period, would the petitioner have the right of action or proceeding against the treasurer. The contrary view would place it in the power of a municipality, in many cases, to avoid all pay-

ments of its debts, because, if by concert of action, each officer should omit to perform his duty, the time consumed in compelling such performance might be made to consume all the period of the statute, before the funds would reach the treasury. We do not think the Legislature intended such result.' "

This last Oklahoma case clearly holds that the statute begins to run when the fund was actually collected.

In the case of City of Sulphur v. State ex rel. Lankford, 62 Okla. 312, 162 Pac. 744, the court specially referred to and approved the holdings of the court in the Greer County Case, supra, and also referred with approval to the same supporting cases cited in the Greer county case, and also approved the doctrine announced in the Barnes v. Turner case supra. In the later case of Fabric Fire Hose Co. v. Town of Afton, 95 Okla. 298, 219 Pac. 680, the three Oklahoma cases last discussed are referred to with approval. Wetmore v. Monona County, 73 Iowa, 88, and King Iron Bridge Mfg. Co. v. Otoe County, 124 U. S. 459, are authorities for the same doctrine.

All of these cases hold the cause of action accrued, not upon a refusal of payment, but when the money for the payment of the warrants was actually collected.

No case in this state has been brought to our attention holding that in such case the statute does not run if the money is not actually applied to the payment of the warrants.

It is contended by the defendants that it was a condition precedent to the plaintiff's right of action that a notice should have been given to present these warrants for payment, and therefore the limitation did not begin to run. It seems to us that there are several reasons why this contention is unsound: (1) The plaintiff or his predecessor was the party required by law to make the call. The law is that "a party cannot prevent the running of the statute of limitations by omitting to do some act which he might have done, or which he is required by law to do." Reizenstein v. Marquardt, 75 Iowa, 294, 9 A. S. R. 477. In the case of Prescott v. Gonser, 34 Iowa, 175, the court said:

"The county, whose officer the defendant is, is a corporation for political purposes (Rev. par. 221), and as such is clothed with the attribute of perpetual succession, as long as the corporation shall have an existence. It is the same person in law today as when these wararnts were issued; in like manner as the 'Great Father of Waters' is still the same river, though the parts which compose it are ever, and will continue to be,

while its majestic stream shall pursue its course to the sea, changing every instant of time."

So, upon receipt of the money, it was the duty of the county treasurer to give this notice, and he was acting, not in his individual, but in his official capacity.

(2) The plaintiff held these identical warrants in his own hands, and he received in his own hands the money raised by taxation for their payment. What need was there for him to give personal notice or constructive notice by publication to himself of the fact that the moneys for the liquidation of these warrants had been received by him? He knew it better than anyone; he knew it the exact moment that it came into his hands, and he knew for what purpose it was collected, and for what purpose it should have been used. It seems to us to be vain and foolish to argue that a call issued over his name would have been of any benefit, since the only purpose of the call was to give information that the plaintiff, in the first instance, already had.

(3) Upon a careful reading of the stipulation, it nowhere appears that the call was not actually given. The presumption of law is that public officials have performed their duty, and, in the absence of a clear showing to the contrary, the court should not find that what the law requires to be done has not been done. City of Sulphur v. State ex rel. Lankford, 62 Okla. 312, 162 Pac. 744, citing Hubbell v. City of South Hutchinson, 64 Kan. 645, 68 Pac. 52.

(4) It has been held that the giving of notice to present warrants for payment is for the protection of the municipality against the accruing of further interest on outstanding warrants. Bodman v. Johnson Co. (Iowa) 88 N. W. 331.

"It is no stretch of language to hold that a cause of action accrues for the purpose of setting the statute (of limitations) in motion as soon as the creditor, by his own act, and in spite of the debtor, can make the demand payable." Palmer v. Palmer, 36 Mich. 487.

In the case of County Board of Education v. State Board of Education (N. C.) 12 S. E. 452, the court held that where the State Board of Education apportioned a share of the money in its hands to a certain county and subsequent thereto pays a portion thereof to another county and the balance to the first named county with notice to it, it is a conversion, and the statute of limitations begins to run in favor of the State Board and against the former county from

the time of such conversion and notice. In the last-named case, the bar of the statute of three years was successfully interposed.

It certainly could not be contended that the plaintiff did not have the right to demand payment of the warrants immediately after the money had been collected for that purpose. The stipulation shows that the taxes were properly levied and collected in an amount more than sufficient to fully liquidate these warrants, and that the plaintiff made no effort to pay the same or any part thereof. The stipulation does not disclose what became of the money. It simply says that other warrants subsequent in date were paid out of this tax money. There is no showing as to when these moneys were applied to the subsequent warrants. The money may have lain idle in the treasury for months or years, so far as the proof discloses. The plaintiff's position is peculiar. He seeks to recover in this action upon the ground that he failed to perform his duties and retire the warrants when sufficient funds had been collected in taxes for that purpose. His failure to retire these warrants, it seems clear, was a breach of his official duty, and for which his bond would have been liable. No act remained to be done by the township; they had paid their taxes; and we think that the custodian of the school fund cannot now prevent the running of the statute of limitations because such custodian failed to properly apply the funds raised for the payment of these warrants. 17 R. C. L. p. 958, where the text says:

"The reason in support of this position has been stated to be that the statute should not run in favor of the defendants as long as they failed to do the affirmative act of levying a tax creating a fund for the payment of indebtedness and the taking up of warrants, and the courts should not permit them to interpose their failure to act as by law required, as a defense to the payment of a just obligation." (Citing Barnes v. Turner, 14 Okla. 284, 78 Pac. 108.)

But in the case at bar, the affirmative acts of levying and collecting the tax had been done.

It is also contended that this was an express trust against which the statute of limitations does not run. In the case of Stillwater R. Co. v. City of Stillwater (Minn.) 68 N. W. 837, suit was brought for condemnation money twelve years after the award was made. It was contended that this being a special fund, it was held as an express trust and the statute of limitations did not run. The court said:

"It is obvious that this action is not one to enforce a trust within the meaning of the statute cited. It is simply a legal action for the recovery of the amount of the award, and was brought more than twelve years after it was set apart for the plaintiff."

"The general rule is that for a trust to be exempt from the statute (of limitations), not only must it be an express trust cognizable solely in equity, but the contest or suit involving it must arise between the trustee and the cestui que trust; and not, for example, between the cestui que trust and the trustee on one side and strangers on the other." 37 C. J. p. 918, and cases cited under notes 52, 53 and 54; State v. City and County of Milwaukee (Wis.) 138 N. W. 1006.

The case at bar is simply an action at law for the recovery of the face of the warrants and interest thereon. Certainly, it would seem that at any time after the receipt of the money by the treasurer an action at law was maintainable therefor. Shelby Co. v. Bragg (Mo.) 36 S. W. 600; Dearborn County v. Lods, 9 Ind. A. 369, 36 N. E. 772. The treasurer in the case at bar is made custodian of the funds. Section 10954, C. O. S. 1921, provides for township treasurers and their duties. Section 10973 abolishes township government and section 10981 provides that the words "county treasurer" shall be substituted for the words "township treasurer," and in section 10385, the county treasurer of each county is constituted the custodian of the school district fund. The word "treasurer" is the one usually employed to designate a custodian of public money. Yarnell v. Los Angeles, 87 Cal. 603, 25 Pac. 767.

In addition, we think from an inspection of the pleadings in this case there can be no question but what this is simply an action at law, and not an action to enforce an express trust.

In the case of Board of County Commissioners of Woodward Co. v. Willett, 49 Okla. 254, 152 Pac. 365, the plaintiff brought suit for certain moneys alleged to have been illegally paid to the defendant, alleging that such sums were in excess of the compensation provided by law. The court sustained a demurrer on the ground that the action was barred by the statute of limitations. The court said:

"Whether he did right as to the first cause of action turns upon the question of whether the statute runs against an action by the county to enforce, as here, a private right of the municipality. And this right, which is sought to be enforced, is a private right for the reason that not all the people of the state have an interest in the funds of the

county illegally paid out and sought thereby to be recovered, but only that part of the public within the confines of the county are interested in the funds."

Having reached the conclusion that the statute of limitations runs against municipal warrants, that the statute of limitations begins at the time of collection of the moneys for the payment thereof; and last, that the statute of limitations runs against a county which is the owner by purchase of said warrants in the enforcement of collection of same, we hold that, under the facts in the stipulation and under the authorities cited, the plaintiff's causes of action are barred by the statute of limitations, and that the judgment of the trial court should be affirmed.

DIFFENDAFFER, HALL, JEFFREY, and HERR, Commissioners, concur.

By the Court: It is so ordered.