STANOLIND PIPE LINE CO. et al. v. JEFFERSON COUNTY, EXCISE BOARD.

No. 30263.    May 27, 1941.

Rehearing Denied July 1, 1941.

*114 P. 2d 925.*

Mastin Geschwind, of Oklahoma City, for plaintiffs in error.

John B. Hanna, County Atty., and Paul R. Dillard, Asst. County Atty., both of Waurika (J. Berry King and George J. Fagin, both of Oklahoma City, of counsel), for defendant in error.

BAYLESS, J. Stanolind Pipe Line Company, a corporation, et al. protested certain levies made by certain school districts in Jefferson county, and approved by the county excise board, and appeal from the order of the Court of Tax Review denying the protest. The levies protested were for the fiscal year 1940-1941.

Following the mandate in Hullum v. R. J. Edwards, Inc., 187 Okla. 408, 103 P. 2d 527, the county treasurer devalued the sinking fund account and thereby reduced the credits of these school districts in the sinking fund. He did this as of June 30, 1940, taking the condition in each of these accounts as of June 30, 1939.

In the brief of the plaintiff in error it is said:

"Protestant's complaint against said levy is based on several propositions. First, that the county treasurer has no lawful authority to reduce the credit appearing on his books as belonging to the sinking fund of a school district. Second, that the method shown by the record to have been followed by the county treasurer in the case at bar is unjust and inequitable in that by said method the entire amount of worthless investments is charged exclusively against the credits of school districts existing June 30, 1940; that no lawful method for charging off the value of worthless investments as against the credits of school district sinking funds is provided by statute and the reduction of such credits is not within the scope of authority of a county treasurer nor within the scope of authority of any court. Third, that the levy made is shown to be for the purpose of rehabilitating a deficit in sinking fund required to pay the principal of a bond maturing August 16, 1940, together with interest thereon, and said levy cannot be collected before said bond matures and therefore cannot lawfully be levied for such purpose."

A careful reading of the brief indicates that while these three propositions are generally discussed, other propositions formally mentioned in the index are also discussed. The matter seems to resolve itself into more issues than are specifically mentioned in the quotation. We shall try to discuss everything mentioned in the brief.

Has the county treasurer authority to devalue investments or to charge off investments in the sinking fund as being worthless? This question implies two questions: (1) Are the investments worth less than the value at which they are carried? and (2) if they are, has the county treasurer the authority to so determine and to so show?

For the purposes of this opinion the first division of the question is settled. Prior to 1925, more than $21,000 of sinking funds in the hands of the county treasurer were invested in certain warrants. A successor county treasurer brought action on said warrants "as custodian of the sinking funds belonging to various common school districts of said county," and a judgment was rendered holding these warrants barred by the statute of limitations and unenforceable, and this judgment was affirmed by this court. Sappington v. Board of County Com'rs, 134 Okla. 253, 273 P. 274. Therefore, insofar as this action is concerned, it has been judicially determined that those warrants are unenforceable and of necessity worthless, and it is pointless to discuss the power of the county treasurer to so determine. He has not undertaken to exercise such power.

With respect to the second division of the question propounded, it is possi-

ble that no express statutory authority exists for the county treasurer, either on his own account or as the representative of the school districts, to strike from the credit balances the value attempted to be given those credit balances based upon these worthless warrants. The officials of the school districts adopted resolutions to this effect, and it does not appear to be the act of the county treasurer alone. The same may be said with respect to the officials of the school districts, or the county excise board, or any other public official, or even of the courts. But such an argument as protestant makes in this respect is academic in the face of the reality that must be faced. We tried to explain this in the opinion in the Hullum Case, supra. These warrants are worthless. They were present in the sinking fund accounts and were represented in its bookkeeping transactions as things of value when they actually were not. As we pointed out, the law imposes the duty upon the officials of the school district, and the county officials who assist them, to provide a solvent sinking fund and to maintain it in a solvent estate. We say that when such officials find credited to their sinking fund an investment whose value has judicially been determined to be nil, such officials in preparing the estimates of the needs of the school district and in approving the same and in making levies therefor are at liberty to ignore such worthless investments, despite the fact that such officials cannot point to express statutory authority for their action. We say the implications of the authority imposed upon them to maintain the sinking fund provide the requisite authority.

It is next argued, apparently in connection with the second proposition, that the method adopted for devaluing the sinking fund account is erroneous, arbitrary, and inequitable.

The argument that the method is inequitable is based largely upon the showing that the investments were made long before these districts had funds in the sinking fund, and that to saddle upon these districts the entire loss of the bad investments is contrary to law. No showing is made in the record with respect to when the investments were actually made, nor what school districts had money in the sinking fund to be so invested. All that seems to be certain is that these districts had levied annual accruals to the sinking fund to meet their needs, that before the action in the Hullum Case was filed it was discovered that all of the money paid into the sinking fund by these districts was not there, and that the portion of the money that was not there apparently was represented by these worthless investments that had been carried forward as valuable assets for many years. We may assume for the purposes of this decision that none of the money of these school districts went into these worthless investments when first made, but the fact remains, nevertheless, that throughout the years the money paid into the sinking fund by these school districts and others has been used to meet the demands upon the sinking fund throughout the years until there is now left in the sinking fund these worthless investments carried at their supposed face value and some cash. It is certain that all of the money paid in is not now there. There is no evidence in the record to show the condition of the sinking fund at any of these times, either in the aggregate or apportioned to the various common school districts that contributed to it. Whatever may be the alleged inequity of the present situation that leaves these school districts with these worthless investments in lieu of the money they paid in, it remains that their respective sinking funds are depleted to that extent and must be rehabilitated.

The adoption of the date of June 30, 1940, for the devaluation of these sinking funds is arbitrary, and we are convinced that each daily transaction resulted in some variance therein. But this variance because of daily transactions would occur irrespective of when the valuation took place. We think it is possible to audit the sinking fund records of this county from the time the worthless investments were made to date,

and to ascertain a date when the devaluation should take place that would not amount to an arbitrary selection; but there is no evidence in the record that would permit this audit to be made; and we do not know that it would produce a different result after having been made. These worthless investments had their influence upon the credit balances of the various common school districts, and while we recognize the arbitrary character of the date selected, we are unwilling to set it aside unless there is something before us to indicate that a better date can be found or a substantially different result in the calculations reached.

We cannot determine from this record with any degree of certainty that the calculations made by the county treasurer are erroneous. The only evidence before us on the issue consists of the estimates of financial needs of the various districts for the fiscal year, and the detailed showing therein which does not antedate June 30, 1939. The county treasurer says that there are two variants used in the calculations, one based on the jack-pot method of keeping sinking fund accounts and investments prior to 1937, and a different method since. He says he devalued the sinking fund credits of all school districts 67.88%, as he understood the Hullum opinion to require. It is suggested that probably all of the districts were not affected by the Hullum opinion. That matter was injected in the Hullum Case briefs, and we alluded thereto in our opinion and said that if any of the school districts were not properly brought within the attempted stipulation set out, such fact could be shown at the proper time. No showing is made here by protestants, and we feel the burden is on them. As pointed out above, it may be possible to audit the sinking fund accounts back to the date of the investments and reach a correct calculation on these matters, but such was not done at this hearing and we have nothing before us upon which we can undertake to do this.

We agree with protestants that the decision in the Hullum Case did not set an arbitrary figure at which every sinking fund in the county should be affected. The figure of 67.88% was stipulated in the record in the Hullum Case as being the extent to which the worthless investments affected the sinking fund. If that calculation was erroneous, it was competent to show its error in this record. It was not. Protestants argue that the worthless investments may not have equaled 67.88% of the sinking fund at any time after the filing of the Hullum action. There is nothing in this record to show whether this is true or not. We think the burden rested upon protestants in this matter, and that such burden could only be discharged by evidence and not by evidence that does no more than suggest doubt, nor by academic argument that is not productive of realistic application.

No argument is presented on the third proposition stated in the quotation from protestant's brief, and we do not discuss it.

In the latter half of protestant's brief, protestants begin anew a discussion of other propositions more formally stated in the index to the brief, and we now discuss them.

It is first contended that it was error to overrule the protest with respect to consolidated school district 52, because from its estimate there appears a clear miscalculation of $500, and the deficit shown is excessive in that amount. In the exhibits attached to the estimate approved by the county excise board and the Court of Tax Review, appears an item of bonds issued of $5,000, less a payment thereon of $4,000, and a balance of $1,500. This balance is clearly $500 too much. There is no explanation of this in the record, and we must hold that the sinking fund levy based on this calculation is excessive and must be reduced proportionately. The argument of defendant in error that the protestants have the burden of showing wherein and why such an error appears is without merit. A school district may not levy more taxes than its estimate of needs shows.

Contention two is a repetition of the argument previously considered with respect to the finality of the figures approved by this court in ordering the mandamus in the Hullum Case. We do not think that the Court of Tax Review treated them as immune to attack in this matter. We think the protestants wholly failed to meet the burden that rested upon them to disclose the error in the calculations used by the county treasurer. The most that protestants have done is to use the treasurer's statement that he devalued all sinking fund credits 67.88% in compliance with this court's mandate, and then to demonstrate that the results obtained do not in any case reach that exact result, and to show that the results vary proportionately in the various districts. But we cannot overlook the fact that the county treasurer stated that other factors not definitely shown entered into this calculation. There is not sufficient in this record to sustain protestants' claims of errors in calculation in this respect. We will not repeat what we have already said with respect to the effect of the arbitrary selection of June 30, 1940, as the date for devaluation.

We come to protestants' third contention. Using the language of this court in National Surety Co. v. State ex rel. Richards, 111 Okla. 185, 239 P. 262, to the effect that the money paid into the hands of the county treasurer by the common school districts to the credit of their sinking funds becomes the property of the county, and that the investments of that money belong to the county, and the loss of that money or the investments is the loss of the county and is not the loss of the respective school districts, protestants argue that there is no authority of law for the holding in the Hullum Case and that the two are cases in conflict.

We agree that the National Surety Company Case holds to the general effect stated by protestants. Although that case appears as authority for that rule, nevertheless it does not conflict with our opinion in the Hullum Case. In that case we said that the officials of the school district had the constitutional duty to provide and maintain a sinking fund. That duty is a part of the contract that exists between the school district and the holder of its bonds. It is no concern of the bondholder that the school district has once provided money with which to pay the bond and that money has been lost and is not available at the maturity of the bond to retire the bond. The obligation the school district owes to the bondholder is to provide the money. The school district cannot discharge this duty by telling the bondholders that the money provided has been misspent. The issue of whether the county or the county treasurer has breached the duty owing to the school district, and any liability that may exist by reason thereof, is no concern of the bondholder.

We have spoken of the constitutional duty to provide and maintain a sinking fund to pay bonds at maturity. The Legislature has enacted permissive legislation whereby municipalities may replace the money they have raised but which has become lost in order that they may discharge this constitutional duty, and we approved this legislation in the Hullum Case, which was between the bondholder and the school district; and we say in this case, which is between the school district and the taxpayers therein, that such is a lawful method of discharging the constitutional duty.

The issue contended for by virtue of the authority of the National Surety Company Case is not a proper issue in this case, nor was it a proper issue in the Hullum Case. That issue would come into play in an action between the school district and the county and county treasurer.

The order of the Court of Tax Review denying the protest is sustained in all respects, save ground of protest 8 and is reversed insofar as the deficit is affected by the $500 miscalculation, and the deficit levy for the fiscal year is ordered reduced accordingly.

CORN, V.C.J., and RILEY, OSBORN, GIBSON, HURST, and ARNOLD, JJ., concur.