## EXCISE BOARD of CREEK COUNTY v. GULF PIPE LINE CO.

No. 21386. Opinion Filed Sept. 22, 1931.

Rehearing Denied March 29, 1932.

W. F. Pardoe, Co. Atty. and George H. Jennings, for plaintiff in error.

James B. Diggs, Wm. C. Liedtke, Russell

G. Lowe, Redmond S. Cole, and C. L. Billings, for defendant in error.

RILEY, J. This is an appeal from a judgment of the Court of Tax Review sustaining the protest of the Gulf Pipe Line Company as to a portion of the levy of Mounds township, Creek county, made for sinking fund purposes for the fiscal year 1929-30.

The items involved are levies made to cover one-third of a judgment against said township dated October 26, 1928, in favor of Arthur P. Johnson—$1,652.55; one-third of a judgment against said township of the same date in favor of A. M. Smoot—$1,762.28; and a levy made to cover interest coupons, commissions to fiscal agencies and one annual accrual of a funding bond issue of said township in the sum of $93,000, dated June 10, 1921.

The judgment sustaining the protest as to the levies to cover the accruals on the bond issue is conceded to be erroneous under the stipulation of the parties and the holding of this court in the matter of the protest of Texas Pipe Line Company, 143 Okla. 177, 288 Pac. 334, and Protest of Gulf Pipe Line Company, 143 Okla. 180, 288 P. 336, and must be reversed and remanded for a new trial.

This leaves for consideration only a levy of .49 of a mill made to cover the one-third of the two judgments mentioned.

This part of the levy is protested upon the ground that the judgments were taken upon warrants issued by said township in excess of the estimate made and approved for the fiscal year in which they were issued, and that no election was held authorizing such excessive indebtedness, and also upon the ground that the alleged indebtedness represented by the warrants was in excess of the five per cent. constitutional debt limit of the township, and that the judgments obtained on said warrants were void. The latter contention was abandoned at the trial. The protest was sustained upon the first ground set out, and the county excise board appeals.

There are ten specifications of error presented under four propositions:

The first proposition is that the court erred in overruling the special appearance and plea to the jurisdiction of the court.

It is first asserted that the special plea should have been sustained because the protest was not signed by the protestant or any one in its behalf. This particular defect was not called to. the attention of the trial court.

In 49 C. J. 485, the rule as to failure to sign pleadings is stated as follows:

"Failure by a party or his attorney to sign a pleading is ordinarily regarded as merely a formal error which may be cured by amendment, even after the jury is sworn, or after judgment. A motion for leave to amend an unsigned complaint is entitled to precedence over a motion to reject the pleading for want of a signature."

A proper way to reach such defect is by motion to strike. 49 C. J. 384.

Failure to sign a pleading, not being a defect in substance, does not render a judgment void. 49 C. J. 582.

If a judgment based upon an unsigned plea is not void, then the matter is not jurisdictional, and a plea to the jurisdiction of the court based upon such defect is properly denied.

It is next urged that the plea to the jurisdiction should have been sustained because the protest did not state facts sufficient to satisfy the requirements of section 2 of Initiative Petition No. 100, by stating "The grounds upon which said irregularities are based." This contention is without merit. Demurrer to the protest is the proper way to reach alleged defects of this nature, and none was filed.

The second proposition is that there is no competent evidence in the record to sustain the finding that the two judgments complained of were void. This proposition may be considered in connection with the third, which is that the judgments were rendered in a court of general jurisdiction, were regular and fair on the face of the judgment roll, and could not, therefore, be impeached by collateral proceedings in the Court of Tax Review.

The judgments alleged to be void were rendered in the district court of Creek county, and were based upon warrants of Mounds township, regular on their face. The petition in the Johnson judgment consists of three causes of action, setting up three separate warrants issued by Mounds township, series 1924-25, one for $23, issued to George Glenn and assigned to A. P. Johnson; one for $30, issued to Garrett Duff and assigned to A. P. Johnson; and one for $274, issued to A. P. Johnson. The Smoot judgment was based upon a warrant of the township for $205, series 1923-24, issued to A. M. Smoot, and a warrant for $1,204, series 1924-25, issued to Arthur Smoot.

The petitions alleged as to each warrant that it was issued upon duly verified claims for work and labor performed by the claimant within the fiscal year for which the warrant was issued; that the contract of employment was within the estimate of the township for road maintenance as allowed and approved by the excise board of Creek county; that although there was a sufficient amount in the estimate for road maintenance for the fiscal year at the time the services were rendered and at the date of the execution of the warrants, said funds were diverted by the township board to the payment of other claims and warrants issued after the issuance of the warrants in question, and the funds provided were thereby exhausted so as to leave nothing with which to pay the warrants. In each case it appears that the county attorney of Creek county filed an answer, setting up the defense that the warrants were illegally issued in that the work and labor for which they were issued was, in fact, performed during the previous fiscal year and not within the year for which the approved estimate against which the warrants were drawn was made, and also alleged that the indebtedness represented by the several warrants was in excess of the five per cent. constitutional debt limit of the county. For some reason not explained, these answers were stricken by the trial court and the township given further time to plead, which was extended from time to time, but no pleadings were ever filed, and at the time the judgments were rendered the township was in default for sometime. No defense whatever was made by the township or its officers.

The court, in each case, as shown by the journal entry of judgment, made and entered its findings, among which are the following:

"The court further finds that each of said amounts so due to the plaintiff is for the items so alleged in plaintiff's petition, and that each of said contracts, as alleged by the plaintiff, were within the estimate as made and approved by the excise board for the respective fiscal years for said township, and that the warrants so issued, as alleged in plaintiff's petition, were valid claims against the said defendant; that the said plaintiff has made all necessary proof concerning the validity thereof; that said plaintiff is the owner and holder of each of said warrants, and is entitled to judgment against said defendants for the amounts above set forth.

"The court further finds that after the execution of said contracts referred to in plaintiff's petition and the issuance of said warrants, as alleged in plaintiff's petition, said funds became exhausted, and that there is not now available, and has not at any time since said dates been available, sufficient funds in possession of the township board of said defendant with which to pay said warrants, and that plaintiff is entitled to judgment against said defendant for the amounts so above found to be due."

It thus appears that each petition stated a cause of action against the township, and the trial court specifically found that the respective contracts for work and labor, as alleged in the petition, were within the estimates as made and approved by the excise board for the respective fiscal years, and

"* * * that the warrants so issued, as alleged in plaintiff's petition, were valid claims against the said defendant; that the said plaintiff has made all necessary proof concerning the validity thereof. * * *"

In the Protest of Carter Oil Company, 148 Okla. 1, 296 P. 485, the validity of a judgment rendered in the district court was successfully attacked in a proceeding before the Court of Tax Review and upheld by this court. It was there held, in effect, that the judgment of the district court was void upon the judgment roll for the reason that the petition did not state a cause of action, in that there was no allegation that any appropriation had been made for the purposes of purchasing the busses by the school district, or that there was any available appropriation for that purpose. In that case no warrants had been issued by the school district, and the judgments were based upon a claim which had been disallowed, and warrants refused.

An entirely different state of facts is presented in this case. As stated before, the petition alleged a contract of employment within the estimate approved by the excise board for that particular year. An estimate duly made and approved by the excise board constitutes an appropriation. Section 9702, C. O. S. 1921.

The petition further alleged that the work and labor was performed under said contract and within the respective fiscal years, and further alleged that claims had been presented to and allowed by the township board and warrants issued. Copies of the warrants were attached to the petition, and in each instance showed upon the face thereof that they were issued within the estimate made and approved for the fiscal year during which they were issued. The actions were based upon the warrants thus issued and not upon an alleged contract based upon claims filed and disallowed by the board.

In Faught v. City of Sapulpa, 145 Okla. 164, 292 P. 15, it is said:

"Certainly there must be some forum in which the validity of a claim against a municipality may be asserted. Under the Constitution the courts of this state constitute the forum, and under certain circumstances, the federal courts constitute such a forum. The judgment of a court of competent jurisdiction, having jurisdiction of the subject-matter and the parties and jurisdiction to make the particular order made, is, in the absence of an appeal, final and conclusive, subject to be vacated, set aside or held for naught in the manner provided in the Code of Civil Procedure. When such a court renders a judgment in a proper proceeding after the necessary defendants are before the court, that judgment, unappealed from, is final until vacated, set aside, or held for naught in a lawful manner, and is binding and conclusive and cannot be collaterally attacked. That rule is fundamental, and no citation of authority therefor is necessary."

If the judgments here involved are not valid, or if the warrants upon which they were based were invalid, such does not appear upon the face of the record before us, and the judgment may not be defeated or evaded in an incidental proceeding not provided by law for the express purpose of attacking the judgment.

It is argued, however, that answers having been filed by the county attorney, and the judgment roll not showing that they were stricken by the court, no default judgment could be legally taken. The answer to this argument is that the record discloses that the entire judgment roll was not before the Court of Tax Review. There is evidence introduced, without objection, that the court struck the answers, but the order of the court was not introduced and is not in the record.

In Pettis v. Johnston, 78 Okla. 277, 190 P. 681, it is held:

"A judgment is void on its face when its invalidity is affirmatively disclosed by an inspection of the judgment roll, but it is not void in the legal sense for the want of jurisdiction unless its invalidity appears on the face of the record. Edwards v. Smith, 42 Okla. 544, 142 P. 302, followed."

It is asserted, however, that the judgments complained of are void for failure to comply with the provisions of chapter 106, S. L. 1925, the applicable provisions of which are:

"Section 2. Before final judgment in any suit based on contract shall be rendered against any municipality by any court of any county in the state of Oklahoma, except in proceedings to refund any indebtedness of said municipality, proof shall be made to the court of the existence, character and amount of the outstanding legal indebtedness of said municipality, which proof shall include a statement compiled by the various officers having custody of the records from which the information required in the statement is taken, under oath, showing the following:

"1. An itemized statement of the bonded indebtedness of said municipality, exclusive of the bonded indebtedness and the alleged indebtedness proposed to be converted into a judgment.

"2. An itemized statement of the legal indebtedness of said municipality, exclusive of the bonded indebtedness and the alleged indebtedness proposed to be converted into a judgment.

"3. An itemized statement of the indebtedness proposed to be converted into a judgment, so classified as to show, in separate exhibits, all items of questionable legality, if any, and the reasons of said officer or officers therefor:

"(a) The appropriations against which each warrant was drawn or claim accrued if in judgment, and if within the limits and purposes thereof as provided by law;

"(b) The income and revenue provided for the respective years, consisting of taxes levied and the actual collections of 'estimated income'; the total warrants issued against the same or the accumulated accruals as the case may be, and the amount, if any, in excess of the total income and revenue of the year;

"(c) The condition of each fund from which such indebtedness is payable as of the close of the month next preceding the filing of application. * * *

"Section 3. No judgment shall be rendered against any municipality by any court until the provisions of section 2 hereof, have been fully complied with. Any judgment rendered in violation of the provisions of this Act shall be void and of no effect."

In the instant case the judgments were taken upon warrants, and the question arises whether or not the statute referred to is applicable in an action based upon a municipal warrant, and whether or not such an action is an action based upon contract within the meaning of the statute mentioned. We think not. When the township officers employed the respective parties to whom the warrants were issued to perform the work and labor, this was a contract; when the work and labor had been done, the contract had been performed, and had the township board then refused to allow the claims and to issue warrants, and suits had been commenced to recover for the work and labor done and performed, the actions would then have been based upon the contracts, and no presumption would exist in favor of the val-

idity of the claims. It would then have been necessary for the claimant to present the proof required by chapter 106, supra, before final judgment could be entered. The reasons for requiring such proof are apparent. It is that the proper officers, having custody of the records showing the condition of the funds out of which the indebtedness is payable, present the information to the court in the manner prescribed by the statute. But where a warrant has been issued, all these things have been done. The warrants show upon their face the amount of the appropriation and the particular fund out of which they are payable, and also show the amount of warrants previously drawn against the fund, the amount of the warrant, and the balance left in the fund. They are signed by the township trustee and clerk and registered by the township treasurer as required by law, and are regarded as prima facie valid.

Municipal warrants are not defined as contracts. In Town of Bithlo v. Bk. of Commerce (Fla.) 110 So. 837, they are defined as follows:

"A warrant is the command of the council, board, or official whose duty it is to pass upon the validity and determine the amount of the claim against the municipality to the treasurer to pay money out of any funds in the city treasury, which are or may become available for the purpose specified, to a designated person whose claim therefor has been duly adjudged and allowed."

The same definition may be found in 2 Dillon on Municipal Corporations (5th Ed.) 1283. The warrant of a municipal corporation is, in fact, only the order of one of its officers upon another of its officers to pay some of its funds to a third person. Hornblower v. Pierre, 241 Fed. 450, 154 C. C. A. 282.

"There is a vast distinction between warrants and bonds. Warrants are mere orders or drafts on the treasurer, payable on presentation when funds are available, or at a fixed date with interest if authorized by statute." Marshall v. State, 88 Fla. 329, 102 So. 650.

Municipal warrants, signed by the proper officer, are prima facie valid and establish prima facie, though not conclusively, the validity of the claims for which they are issued, so as to cast on the municipality the burden of proving a defense of invalidity. 44 C. J. 1169. Hamilton Township v. Underwood, 81 Okla. 256, 198 P. 300; City of Sulphur v. State, 62 Okla. 312, 162 P. 744. In the latter case, it was held:

"It is a presumption of law that all public officers perform their duty, and in the absence of clear proof to the contrary, this court will refuse to hold that they did not do so in issuing warrants for claims against municipalities."

It is quite apparent that the Legislature did not intend that the provisions of chapter 106, supra, should apply to actions based upon warrants.

However, it further appears that the court, in its journal entry of judgment in each case, specifically found that the plaintiff had made all necessary proof concerning the validity of the warrants. This would include the proof required by chapter 106, supra, if it were necessary. The only evidence that such proof was not produced was the parol testimony of the witness George H. Jennings, who was attorney for plaintiffs in the two suits. We do not think the findings and judgment of a court of general jurisdiction can be impeached in this manner.

The judgment and order of the Court of Tax Review is reversed as to that part thereof relating to the levy made to cover the one-third of the two judgments, and that part thereof relating to the levy to cover interest coupons and accruals on the $93,000 funding issue is reversed and remanded for a new trial in accordance with the stipulation of the parties, and the opinion of this court in Protest of Texas Pipe Line Company and Gulf Pipe Line Company, supra.

CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. LESTER, C. J., dissents from that part of the decision holding chapter 106, S. L. 1925, not applicable to a suit on warrants, and concurs in conclusion. KORNEGAY, J., dissents, CLARK, V. C. J., and HEFNER, J., absent.

---

KORNEGAY, J. (dissenting), In the majority opinion filed in this case, the fourth section of the syllabus is as follows:

"4. An action based upon warrants issued by a municipal corporation is not an action based upon contract within the meaning of chapter 106, S. L. 1925."

The statute referred to has been very little used since it was passed. Perhaps some of the courts have overlooked it, and it has slumbered because of the fact that the courts rely, instead of searching for themselves, on the interested parties to bring it to their attention. The evil intended to be avoided by that statute was that claimants, for judgments against municipalities, would very frequently have a stand in with the officials, and, under the doctrine of res judicata, those desiring to

get the advantage of the people who pay taxes could get judgments through inadvertence as well as collusion of municipal officers, and thereby saddle upon the taxpayers not only claims that had no foundation, but excessive claims that were forbidden by the Constitution. Similar questions have been before the court before, and this appears to be about the first time that the court has undertaken to construe out of existence the plain language of the statute. The statute was passed by the Legislature, and it had a right so to do, in order to protect the people against the machinations of buccaneers and freebooters and their allies, as well as the indifference of judges and county officials.

The Constitution, in article 10, sec. 26, provides that no municipality shall be allowed to become indebted in an amount greater than the revenue provided. The exact language, which has been repeated so often that a great many officials ought to know it by heart, is as follows:

"Sec. 26. Limitation upon debts of city, county, etc.—vote by people—sinking fund. No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness; Provided, that any county, city, town, township, school district, or other political corporation, or subdivision of the state, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same."

It will be observed that the words used are "shall be allowed to become indebted, in any manner, or for any purpose." The Constitution created this court. It is called the Supreme Court, but this positive requirement of the Constitution binds this court in all its supremacy, just the same as it binds all other officials connected with the administration of the affairs of the people.

In the present case, as disclosed by the record, warrants were issued on the same day by the township officials far in excess of the estimate made and approved. In the brief that was filed on behalf of the Gulf Pipe Line Company is contained a list of the warrants with their respective numbers, practically all issued on the 24th day of September, 1924, and at the same time, amounting to $29,698.89. The entire appropriation for the township for the year 1924-25, was $13,665.43. From that statement, it clearly appears that the warrants on which the judgments were rendered were excess warrants. The brief thoroughly discusses the matter, and in it there is a statement, practically unchallenged, showing that at one sitting warrants totalling $28,884.29 were issued.

If the story recited in the brief as to the irregularities connected with these warrants and how they were issued is half true, everybody connected with it, if the prosecuting officers did their duty, should have been informed against and been brought to the bar of justice, to answer for dereliction of duty. The testimony is set out in the brief, and it is startling. To indulge in a presumption arising from the issuance of the warrants under the circumstances detailed in this record, is to presume that which is not presumable, and to think that which is unthinkable. When one examines the method pursued in this case in the rendition of judgment, it is amazing that any court, independent of the Statute of 1925, would sanction the proceedings. The Board of Tax Review investigated and evidently were impressed that the judgments procured were fraudulent.

The prior decisions of this court, independent of the statute, cited in the brief on behalf of the Gulf Pipe Line Company, and in support of the decision of the Board of Tax Review, are ample to sustain the decision of the Tax Review Court. However, the Legislature, recognizing the abuses that had been vitalized by the doctrine of "res judicata," passed a law that is set out in the opinion, referred to by title in the syllabus, prescribing that before final judgment on any suit based on contract could be rendered against any municipality, by any court of any county, in the state of Oklahoma, there should be a showing made as to the indebtedness of the municipality, and the essentials of that showing are prescribed. It is very evident that none of the things prescribed by that statute were done in the present case. At page 39 of the brief of the defendant in error, quoting the statute, we find the following:

"Before final judgment in any suit based on contract shall be rendered against any municipality by any court of any county in the state of Oklahoma, except in proceedings to refund any indebtedness of said municipality, proof shall be made to the court, of the existence, character and amount of the outstanding legal indebtedness of said municipality, which proof shall include a statement compiled by the various officers having custody of the records from which the information required in the statement is taken, under oath, showing the following:

"1. An itemized statement of the bonded indebtedness of said municipality.

"2. An itemized statement of the legal indebtedness of said municipality, exclusive of the bonded indebtedness and the alleged indebtedness proposed to be converted into a judgment.

"3. An itemized statement of the indebtedness proposed to be converted into a judgment, so classified as to show, in separate exhibits, all items of questionable legality, if any, and the reasons of said officer or officers therefor:

"(a) The appropriations against which each warrant was drawn or claim accrued, if in judgment, and if within the limits and purposes thereof, as provided by law;

"(b) The income and revenue provided for the respective years, consisting of taxes levied and the actual collections of 'estimated income'; the total warrants issued against the same or the accumulated accruals as the case may be, and the amount, if any, in excess of the total income and revenue of the year;

"(c) The condition of each fund from which such indebtedness is payable as of the close of the month next preceding the filing of application. * * *

"Section 3. No judgment shall be rendered against any municipality by any court until the provisions of section 2 hereof, have been fully complied with. Any judgment rendered in violation of the provisions of this act shall be void and of no effect."

"The record in the instant case discloses that no attempt was made to comply with this act. If there had been introduced in evidence in this case a statement showing the income and revenue provided for the year in question and the total warrants issued against the same prior to the issuance of the warrants in question, this evidence would have conclusively shown that none of the warrants reduced to judgment had any legal standing, but were reduced to judgment in violation of the provisions of section 26, art. 10 of the Constitution of the state of Oklahoma, which section provides that no indebtedness may be incurred in excess of the appropriation and the estimate made and approved for any given year.

"We have here a statute which makes certain proof mandatory before any lawful judgment can be entered, and since it appears in this case that no evidence was offered in support of the prayer of the plaintiff for a judgment and no attempt was made to comply with this statute, as shown by the testimony of the attorney for the plaintiff in the cases below, we submit that the judgment in each case is absolutely void and is subject to collateral attack in any court of the state.

"It may be that we have been a bit harsh in some of the things said in this brief. We have been unable to find any milder terms which could be used in properly painting the picture. We have, we think, fairly stated the case and in the light of the record, it should occasion no wonder that the annual appropriation of this little municipality for the purposes of its sinking fund should be in the neighborhood of $42,000 a year and it should occasion no wonder that the books and records of this municipality went up in smoke or took wings and flew to places where honest eyes might not discover them.

"In the brief of the plaintiff in error herein, counsel have cited numerous authorities stating the general proposition that judgments of courts of competent jurisdiction may not be collaterally attacked. With these decisions we are not here concerned. This court has uniformly held that in suits brought by taxpayers to question the validity of levies made to pay judgments obtained as this judgment was obtained, can be prosecuted to finality and relief granted. See In re Protest Carter Oil Co., supra, and In re Gypsy Oil Company, 141 Okla. 291, 285 P. 67, and cases cited therein.

"We submit that on the record here submitted, the judgment entered in favor of A. M. Smoot, in the district court of Creek county, was an outrage upon the municipality and the taxpayers thereof, when viewed in the light of the undisputed facts, and in the light of the testimony and admissions of Mr. Smoot himself. If we forget every item of the evidence, except the testimony of Mr. Smoot and the verified itemized statement of his which was introduced in evidence, we would be confronted with the fact that he actually worked for this township twenty-one days between July 1st and September 25th, both days inclusive, and that his wages was $7 per day. For this 21 days he has received through the Diehl judgment the entire amount due him. Notwithstanding this fact, it is now contended that this individual should be permitted to recover by warrant and judgment route; the sum of $1,204 additional. If such is permitted instead of being paid the $7 per day for the actual time he worked, he would receive by this process approximately $64 a day.

"Mr. Smoot, the judgment creditor, appeared before the Court of Tax Review, and

his attorney was also present (not a legal appearance that either was a party to the proceedings) and had ample opportunity to explain to the Court of Tax Review just what these warrants were all about. His testimony clearly establishes the fact that when the municipal authorities issued the $1,204 warrant to Mr. Smoot, they were guilty of the grossest misfeasance and malfeasance of office, and we feel that the Court of Tax Review, on the fact of such a record, quite properly found from the facts and circumstances adduced in evidence that the judgments in the district court of Creek county, Okla., were tainted with such palpable fraud that they should be treated as void."

The startling position is taken in the opinion of the majority in this case that a suit based on warrants is not a suit based on contract. Everybody at all conversant with the meaning of language knows that a suit on warrants issued for claims arising on contract or otherwise is a suit based on contract. To reverse the action of the Court of Tax Review on the ground here alleged for holding that the judgments were good, it seems to me, is unwarranted by principle or precedent. The language could not be plainer.

The majority, in the opinion, in generalizing its conclusions on the last page, says:

"We do not think the findings and judgment of a court of general jurisdiction can be impeached in this manner."

This court, though supreme in name, is hedged about by law and by the Constitution that created it. It should not upturn the plain provisions of that Constitution. It should not set aside and hold for naught the plain provisions of the statute, duly enacted by a co-ordinate branch of government, for the purpose of preventing fraud being practiced upon the taxpayers and the institutions that are dependent on the ability of the taxpayer to pay. The provisions of the Constitution and the statute are too plain for argument. The way pointed out therein is so plain that the wayfaring man, described by the Prophet Isaiah, in the 35th chapter and 8th verse, should not err therein. To undertake to distinguish in this matter so as to arrive at a different meaning from what the plain language requires, would be undertaking to explain to a man, blind from nativity, red, the color of the text, as found in the Lawyer's Bible, of the passage referred to. It is highly probable that those who have to provide funds in this state are now seeing in the color that the chapter is printed in.

It occurs to me that the decision as now rendered is sowing to the wind with a reasonable expectation of reaping the whirl-wind that is referred to by another of the prophets of old, as found in chapter 8, verse 7, page 838, of the red-letter Bible found in most lawyers' offices, and copyrighted by the John C. Winston Company in the year 1905.

This being a matter of general importance and fundamental in its nature, I feel warranted in registering this dissent.

See under (5) R. C. L. Perm. Supp. p. 4749.