## In re STATE FUNDING BONDS OF 1935, SERIES A.

No. 26586. Sept. 27, 1935.

Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen. for the State.

OSBORN, V. C. J. This is an original proceeding brought in the Supreme Court through the State Board of Equalization, pursuant to the provisions of article 1, chapter 27, Oklahoma Session Laws 1935, the same being House Bill No. 217, as enacted by the Fifteenth Legislature of Oklahoma, for the purpose of funding certain outstanding and unpaid state warrants drawn against the general revenues of the state, pursuant to appropriations made by law for fiscal years prior to the fiscal year beginning July 1, 1935, and aggregating with interest thereon to October 1, 1935, the sum of $7,210,000. It is made to appear from the application and evidence submitted that it is the purpose of the State Board of Equalization to fund said warrant indebtedness by the issuance of negotiable coupon bonds of the state of Oklahoma, designated "Funding Bonds of 1935, Series A", in the sum of $7,210,000, dated October 1, 1935. Said bonds are to be issued in exchange for the simultaneous surrender, payment, and cancellation of the warrants on a par for par basis plus interest on the warrants to the date of the funding bonds.

Section 3 of article 1, chapter 27, supra, conferred exclusive original jurisdiction upon the Supreme Court to hear and determine said application to fund. The application was filed in the office of the Clerk of the Supreme Court on the 30th day of August, 1935. Notice was given by publication in a legal newspaper of general circulation in the state for ten consecutive days that the application would be presented to the Supreme Court for a hearing thereon on the 10th day of September, 1935, and that all persons interested might file a protest against the issuance of said series of funding bonds and contest the issuance of said series or any part thereof. Said notice stated the amount of indebtedness sought to be funded and that it was represented by state warrants. We, therefore, find and determine that said notice was given in conformity to the statute.

On the 10th day of September, 1935, the hearing on the application was continued until 9 a. m. on the 11th day of September, 1935, and the matter referred to Vice Chief

Justice Osborn for the taking of testimony. No protest was filed against the issuance of the bonds or any part thereof and no one appeared to contest the issuance of said bonds or any part thereof. The applicant, the state of Oklahoma, through the State Board of Equalization, appeared by the Attorney General and submitted testimony in proof of the existence, validity, and amount of the state warrants sought to be funded and tendered to the court for its approval the "Funding Bonds of 1935, Series A," of the state of Oklahoma.

The warrants proposed to be funded, approximately 60,000 in number, were introduced in evidence and are prima facie valid. City of Sulphur v. State, 62 Okla. 312, 162 P. 744; Hamilton Twp. of Okmu'gee County v. Underwood, 81 Okla. 256, 198 P. 300; Excise Board of Creek County v. Gulf Pipe Line Co., 156 Okla. 103, 9 P. (2d) 460. The evidence submitted further disclosed that said warrants were drawn against the general revenues of the state pursuant to appropriations made by the law for fiscal years prior to the fiscal year beginning July 1, 1935; that said warrants were drawn by the State Auditor on claims against the state of Oklahoma which were audited and allowed by the State Auditor; that the warrants were within the amounts of the appropriations against which they were drawn and were for the purposes for which said appropriations were made; that the warrants had been registered as nonpayable by the State Treasurer; that they have not been paid, but are outstanding obligations of the state of Oklahoma, and that there are no moneys on hand in the State Treasury to pay the same; that said warrants were drawn against appropriations made by law for the fiscal years 1933-34, and 1934-35, as set forth in the Session Laws of Oklahoma of 1933 and 1935, and the statutes of Oklahoma; that said warrants aggregate the principal sum of $6,859,430.82, and with interest at the rate of 6 per cent. from the date of their registration as nonpayable to October 1, 1935, the total sum of $7,210,000. We therefore find and determine the said warrant indebtedness of the state of Oklahoma to exist in the total sum of $7,210,000 as of October 1, 1935, and that said warrants are valid and existing obligations of the state of Oklahoma subject to being funded in accordance with the provisions of article 1, chapter 27, supra.

The bonds and coupons designated "Funding Bonds of 1935, Series A," tendered to the court are in proper form. The resolutions adopted by the State Board of Equalization authorizing the issuance of said bonds and prescribing their form and fixing the other details of their issuance were introduced in evidence. Said bonds are dated October 1, 1935, and mature $721,000 on June 30th of each year, beginning in 1937 and ending in 1946. The bonds bear interest, evidenced by coupons attached to the bonds which mature semi-annually on the first days of April and October, each year. The bonds maturing in 1937 and 1938 bear interest at the rate of 1 3/8 per cent. per annum; the bonds maturing in 1939, 1 1/2 per cent. per annum; in 1940, 1 3/4 per cent. per annum; in 1941, 2 per cent. per annum; in 1942, 2 1/8 per cent. per annum; in 1943, 2 1/4 per cent. per annum; in 1944, 2 1/2 per cent. per annum; 1945, 2 3/4 per cent. per annum; 1946, 2 7/8 per cent. per annum. The bonds are personally signed by the Governor and Secretary of State, under the seal of the state and are countersigned by the State Treasurer. The bonds recite that they are issued under authority of House Bill No. 217. supra, and that the full faith, credit, and resources of the state are pledged to the payment of the principal and interest of said bonds. We therefore find said bonds and coupons to have been authorized and prepared in accordance with the provisions of article 1, chapter 27, supra, and said bonds are approved in their sum of $7,210,000.

The question arises whether the failure of the title of House Bill No. 217 to indicate that bonds authorized by that act may be issued to fund interest as well as to fund principal of outstanding warrants renders ineffective the portion of the act which provides for the payment or funding of the interest. Section 57, article 5, Oklahoma Constitution. The title to the act reads in part:

"An act authorizing and providing for the issuance of negotiable coupon bonds of the state of Oklahoma for the purpose of funding the indebtedness of the state represented by * * * valid warrants drawn against the general revenues of the state for any fiscal year prior to July 1, 1935. * * *"

The term "indebtedness of the state represented by valid warrants" embraces both the principal and the interest due on the warrants. Sections 3758 and 5432, Oklahoma Statutes 1931. The term "debt" embraces interest as well as principal. Central Bank & Trust Co. v. State, 139 Ga. 54, 76 S. E. 587. Interest is but an incident to the debt that bears it. Epping v. City of Columbus, 117 Ga. 263, 43 S. E. 803. Also, see Carlson v. City of Helena, 39 Mont. 82, 102 P. 39.

Article 1, chapter 27, Session Laws 1935, under which the bonds under consideration

are being issued, does not violate section 23 of article 10 of the Oklahoma Constitution or other debt limiting provisions of the Constitution. Bonds which are issued to fund valid warrant indebtedness of the state neither create any debt nor increase the debt of the state. In re Menefee, State Treas., 22 Okla. 365, 97 P. 1014; In re Application of State to Issue Bonds to Fund Indebtedness, 33 Okla. 797, 127 P. 1065; Id., 40 Okla. 145, 136 P. 1104 .

Section 3 of article 10, Oklahoma Constitution, provides:

"Whenever the expenses of any fiscal year shall exceed the income, the Legislature may provide for levying a tax for the ensuing fiscal year, which, with other resources, shall be sufficient to pay the deficiency, as well as the estimated ordinary expenses of the state for the ensuing year."

This provision of the Constitution was held not to be exclusive. In re Application of State to Issue Bonds, supra. Therefore, article 1, chapter 27, supra, is not in contravention of said section.

The act of the Legislature under consideration provides in section 4 thereof that the final decision of the court shall be a judicial determination of the validity of the funding bonds approved and shall be conclusive as to the state, its officers and agents, and the public in general; that when the decision of the court approving the bonds has become final, the Chief Justice shall sign each bond approved and that thereafter the bonds approved shall be incontestable in any court in the state of Oklahoma and the bonds shall so state on their face. The bonds under consideration in this case contain that statement on their face.

Section 8 of article 1, chapter 27, supra, reads as follows:

"There is hereby created a special fund in the office of the State Treasurer, to be known as the funding bond fund of 1935. All general funds received by the State Treasurer for the payment of any of the warrants funded under authority of this act shall be placed in the aforesaid special fund, for the purpose of paying the principal and interest of the bonds issued for the purpose of funding said warrants. There shall be credited to said fund such proportion of the revenues as are set aside for the payment of state indebtedness, such revenues accruing and such allocation being made in accordance with the provisions of House Bill No. 29, Session Laws, Regular Session 1935, Oklahoma Legislature. In addition, the State Treasurer shall set aside monthly, out of the first state general fund revenues collected each fiscal year, commencing with the fiscal year 1935-36 and ending with the fiscal year 1945-46, one twelfth (1/12) of the sum sufficient to pay the interest on the funding bonds, hereby authorized to be issued, and the maturing funding bonds due and payable during the fiscal year. Said moneys, when apportioned, shall be by the State Treasurer placed to the credit of the special fund heretofore created, and said general revenue funds are hereby irrevocably pledged to the payment of the principal and interest of the bonds issued under this act. If the aforesaid revenues placed in and credited to the aforesaid special fund are insufficient in any year to pay the principal and interest of the bonds falling due that year, the state of Oklahoma pledges itself to make funds available in a sum sufficient to make up said deficit either out of the general revenue of the state or from taxes levied for that express purpose."

The question arises whether the above section is sufficient to satisfy the requirement of section 4, article 10, Oklahoma Constitution, which reads as follows:

"Sec. 4. For the purpose of paying the state debt, if any, the Legislature shall provide for levying a tax, annually, sufficient to pay the annual interest and principal of such debt within 25 years from the final passage of the law creating the debt."

The bonds involved here are being issued to fund warrants drawn against appropriations for the fiscal years 1933-34 and 1934-35. Section 3, article 10, Oklahoma Constitution, provides that whenever the expenses of any fiscal year shall exceed the income, the Legislature may provide for levying a tax for the ensuing fiscal year which, with other resources, shall be sufficient to pay the deficiency, as well as the estimated ordinary expenses of the state for the ensuing year. As we have pointed out above, this provision that the deficit of any year may be provided for in the ensuing year is not exclusive. In re Application of State to Issue Bonds, supra. To avoid the hardship of raising the revenue to pay this deficit in one year, the Legislature in said case was held to have the authority to spread such burden over a number of years by the issuance of long time low interest bearing bonds as is being done under the act here under consideration. When the Legislature provides for the funding of such deficit by the issuance of bonds, the bonds are payable in the manner and from the revenues provided by the law under which such bonds are issued. In this case the Legislature created the manner and method of payment, which is not in contravention of section 4 of article 10, supra.

Section 8 of article 1, chapter 27, supra,

provides in substance that all general funds received by the State Treasurer for the payment of any of the warrants funded shall be used to pay the principal and interest of the bonds issued to fund said warrants. In addition the State Treasurer is required to set aside monthly out of the first state general fund revenues collected each fiscal year commencing with the fiscal year 1935, and ending with the fiscal year 1945-46, 1/12th of the sum sufficient to pay the interest on the funding bonds issued under said act and to pay the maturing funding bonds due and payable during the fiscal year. If the aforesaid revenue is insufficient in any year to pay the principal and interest of the bonds falling due that year, the state of Oklahoma pledges itself to make funds available in a sum sufficient to make up said deficit either out of the general revenue of the state or from taxes levied for that express purpose. The bonds involved in this application represent warrant indebtedness of the state for the fiscal years of 1933-34 and 1934-35. In McAlester v. Oklahoma Tax Commission (not yet final, decided Sept. 17, 1935) [174 Okla. ___, 50 P. (2d) 647], the validity of House Bill No. 29, mentioned in section 8. art. 1, chapter 27, supra, is under attack in this court. The other provisions of section 8 as to payment of said bonds are not questioned.

Section 8 of article 1, chapter 27, supra, constitutes an appropriation, subject to the limitations therein contained, for the purpose of paying said bonds and is not violative of section 55, article 5 of the Constitution and until repealed. authorizes and requires the State Treasurer to set aside, monthly, out of the first state general fund revenues during the time said act is effective 1/12th of the sum sufficient to pay the interest on all of said funding bonds and any of said bonds maturing and due and payable during the fiscal year. Menefee v. Askew, 25 Okla. 623, 107 P. 159; Blakeney v. Lafayette, Chairman Board of Public Affairs, 95 Okla. 282, 219 P. 292; Edwards v. Childers, State Auditor, 102 Okla. 158, 228 P. 472; Rice v. State ex rel. Short. Attorney General, 108 Okla. 4, 232 P. 807; and State ex rel. Telle v. Carter, State Auditor, 170 Okla. 50, 39 P. (2d) 134. By the last clause of said section, as well as by section 1 of article 1 of said act, the full faith, credit, and resources of the state are irrevocably pledged for the payment of said bonds. The question of the right of the Legislature to repeal or modify the provisions of said section 8 is not before us in this proceeding. But no act of the state, through the Legislature or otherwise, can take away the binding obligation of the state to provide revenues out of which said bonds may be paid.

Nor is the question before the court whether the state may levy an ad valorem tax to pay these bonds the Legislature not having authorized such a levy to be made.

The prayer of the application filed in this cause is hereby granted, and it is the judgment of the court that the funding bonds tendered for approval designated "Funding Bonds of 1935, Series A," of the State of Oklahoma in the total sum of $7,210,000. be and the same are approved, and when this decision has become final, said bonds shall be signed by the Chief Justice of the court and thereafter said bonds shall be incontestable in any court in the state of Oklahoma.

Pursuant to the provisions of section 4 of article 1, chapter 27, supra, the time within which a petition for rehearing may be filed in this cause is hereby limited to within three days from the filing of this opinion with the clerk of this court.

McNEILL C. J., and RILEY, BAYLESS, BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur.