## STATE v. RAEDEKER.

No. 22862. Opinion Filed July 6, 1932.

Rehearing Denied July 27, 1932.

Ernest F. Jenkins and J. M. Springer, for plaintiff in error.

Thomas A. Higgins, for defendant in error.

RILEY, J. The proceedings in error herein are brought by the state to review the action of the district court of Payne county in directing a jury to return a verdict of not guilty in the trial of an accusation presented by a grand jury wherein Ed T. Thatcher, A. C. Holbrook, and J. H. Raedeker, as county commissioners, were jointly accused in ten accounts of maladministration in office, and wherein defendant in error, J. H. Raedeker, was tried separately.

The third to seventh counts, inclusive, charge a violation of section 1654, C. O. S. 1921, in that in each case the defendants while acting as such county commissioners did willfully, knowingly, and wrongfully authorize the drawing of a warrant of Payne county for payment out of the county highway fund of said county, the salary and wage of one Roy Clark for road work done by him of a continuous nature, and that said Roy Clark was at all times mentioned in the accusation related to the said A. C. Holbrook within the third degree of affinity, he being a brother-in-law of said A. C. Holbook, which the said Ed T. Thatcher, A. C. Holbrook, and J. H. Raedeker at all times mentioned in the accusation well knew.

The first and second counts charge substantially the same offense, except it was charged the warrants were in fact authorized to be drawn payable to one Fred Emerson, but were intended to and did in fact cover the wages and salary of said Roy Clark.

The eighth count charges that the defendants, including Raedeker, while acting as such county commissioners, knowingly, wrongfully, illegally, and unlawfully allowed and permitted and authorized one J. L. Nugent to hire and rent out certain machinery and equipment, consisting of a tractor and pile driver, the property of Payne county, to the Tidal Refining Company, whereby said Nugent received about $500 for the use thereof, and without compensation to Payne county, and that said machinery and equipment were taken out of Payne county and the work there done for the Tidal Refining Company, a private corporation.

The ninth count in substance charges defendants with having rented a certain grader belonging to the county to one E. L. Hert for use in the performance of private work done by Hert, and with having furnished a driver or drivers for said tractor who were paid by the county, all for a period of about 30 days at the rate of $25 per day. And with neglecting and failing to collect the money therefor or to account to Payne county for the use of said tractors and the wages of said driver or drivers.

Count No. 10 need not be considered, since it is conceded by the plaintiff in error that there was not sufficient evidence to sustain same and it was so conceded at the trial.

When the cause was set for trial, the case

as to defendants Holbrook and Thatcher had been disposed of and the cause proceeded to trial against defendant Raedeker alone.

At the close of the state's evidence defendant moved the court to direct a verdict of not guilty as to each of the first seven counts upon the ground that the evidence wholly failed to prove the allegations of the accusation and for the further reason that the evidence wholly failed to show any knowledge upon the part of Raedeker that Clark was a brother-in-law of Holbrook until about December, 1930. Defendant also moved separately for a directed verdict as to counts 8 and 9, upon the ground that the evidence wholly failed to in any way connect Raedeker with the matters and things therein charged.

The evidence as to counts 1 to 7, inclusive, conclusively shows that Roy Clark is a brother-in-law and within the prohibited degree of relationship, of Commissioner Holbrook, and was employed originally to operate a tractor upon the county highways of Payne county before Holbrook went into office as county commissioner, and continued in such employment practically all of the time until about February 28, 1931.

With one exception the county pay roll for county highway employees was made out semi-monthly showing the name of each employee, the time employed, and the amount earned by each, and in each instance the pay roll contained the certificate of the county engineer verified before the county clerk to the effect that the several claims embraced in the pay roll were incurred in construction work designated and conducted under his supervision and that the respective amounts claimed were true and correct. The name of Roy Clark did not appear on the pay roll from the first of the year 1930 until the first half of December of that year. The evidence does show that for the month of July, 1930, his wages, covered by count 1, were included in a warrant issued to Fred Emerson, fellow workman. The same is true as to the last half of October, 1930, covered by count No. 2. Count No. 7 appears to be based upon alleged payment of Clark's wages for the last half of November, 1930, but no pay roll covering that period appears in the record and there is nothing to show that Clark worked for the county during said time or that any claim was presented covering that period, either in the name of Clark or Emerson. In the claims covered by counts Nos. 4 to 7, inclusive, the name of Roy Clark appears upon the pay roll. The uncontradicted evidence is that Clark worked at all times in commissioner district No. 3, and under the exclusive supervision of Commissioner Holbrook or Thatcher, and that Raedeker's district was 1 and 2.

The evidence further shows that Raedeker and Clark were strangers to each other, and that Clark had never known or seen Raedeker until about December 9, 1930, at which time, a charge was filed in the county court against Raedeker charging the crime of nepotism for having authorized payment for Clark's services for the month of July, 1930. At the trial it was apparently conceded that Raedeker did not have notice or knowledge of the relationship between Holbrook and Clark until after December 9, 1930. After the prosecution rested, the defendant raised the question that the evidence failed to show any knowledge upon the part of Raedeker of the relationship between Clark and Holbrook. The record then shows the following:

"Mr. Springer: Just one minute, your Honor, please, there was something I overlooked. I did want to introduce those complaints filed in writing the informations in the county court, charging nepotism, for the purpose of bringing notice to Mr. Raedeker. I overlooked that. The Court: I think the court should permit him to do that."

The information against Raedeker was then introduced showing it was filed in the county court December 9, 1930. An appearance bond given by him was also introduced in evidence showing it to have been filed and approved on December 10, 1930.

There was therefore no evidence whatever reasonably tending to prove the allegations of the accusation as applied to the first three counts. It was the plain duty of the trial court to withdraw the first three counts from the jury. The form in which the court withdrew the same is of no consequence.

As to counts 4 to 7, inclusive, a different situation is shown. The record shows that at the beginning of each session at which the claims of Clark were allowed all three of the commissioners were present, except the meeting of December 15, 1930, at which time the payment for the first half of December was considered, in which the claim involved in count No. 4 was based. At that time Commissioner Thatcher, who was chairman, was absent, and Raedeker was elected as temporary chairman. He marked the word "hold" after the claim of Clark and it was not allowed at that session. It was allowed at a later session when the chairman was present.

The record does not show an affirmative vote upon the part of defendant Raedeker for the allowance of any one of the claims. On the other hand, the record shows him present at the beginning of each session and

the county clerk testified that his minutes did not show a negative vote of any of the claims involved, but the record shows that the claim was allowed and approved by the board of county commissioners. This, we think, would be sufficient to raise a fair presumption or inference that defendant Raedeker voted for or consented to the allowance of each of said claims with the possible exception of the claim covered by count No. 3. The county clerk testified that this claim was held up by Raedeker when he was acting chairman, but "at a later date it was put through by the chairman of the board." It is not shown whether Raedeker voted for or against the claim at the time it was finally allowed.

It must be borne in mind that in cases of this kind the rules of law governing the trial of a misdemeanor are applicable. In other words, it is not enough that the evidence sustain the allegation of the accusation by a preponderance thereof. It is necessary that the jury believe from the evidence beyond a reasonable doubt that every material allegation of the accusation is true before a verdict of guilty may be returned. Where the evidence shows a county commissioner present and participating in the transaction of the county's business at a time when a claim of an ineligible employee, as defined by section 1653, C. O. S. 1921, is considered and allowed, and no record is made of how the individual members of the board voted, and the record fails to show a negative vote on such claim, the fair presumption is that all the commissioners voted for such claim, and it will not be presumed that a commissioner who is present for the purpose of passing upon claims against the county did not vote for the allowance of the claim. It is fair to assume that had any one member opposed the allowance of the claim, he would have the record show his negative vote. In such case, in the absence of any showing to the contrary, a prima facie showing is made that all the commissioners voted for the claim and a jury would be warranted in believing beyond a reasonable doubt that every commissioner voted therefor or consented thereto.

Our attention has been called to Myers et al. v. State, 137 Okla. 273, 278 P. 1106, and it is contended that under the ruling in that case as to count No. 2 of the accusation therein, this court should affirm the action of the court below in holding the evidence insufficient as to all the counts from 1 to 7, inclusive. Strict adherence to the rule announced in Myers v. State, supra, would probably require an affirmance of the action of the trial court. But to do so would be to lay down a rule under which a board

of county commissioners might continuously, in flagrant violation of the law, in secret session, allow illegal claims against the county and by failing to make a record as to how each member voted thereon escape conviction therefor. For if they were jointly charged and tried, each could separately demur to the evidence upon the ground that from all that would appear from the evidence, the other two commissioners might have allowed the illegal claims, and under the rule in Myers et al. v. State, supra, the court would be bound to sustain the demurrer. In the Myers Case, supra, the opinion does not show, as the record does here, that all the commissioners were present when the purported illegal claims were allowed, but of necessity one of the two on trial must have been present and with the third member voted to allow the claims. Thus, if the claims were known to be illegal, one or the other of the two commissioners on trial must have been guilty.

A better rule would be where the record showed all members were present and that the claims were allowed and that no negative vote was shown, to hold that a prima facie showing had been made that all had voted therefor, and that any member is entitled to show as a defense to the prima facie case, if he can and desires, that he did not vote for the allowance of the claim or claims in question, or that he had no knowledge of the facts making the claim illegal. The question would be one of fact for the jury. Therefore, in so far as the holding of the court on the question involved in count No. 2 of the accusation therein is in conflict with the views herein expressed, Myers et al. v. State, supra, should be, and is hereby, overruled.

We do not wish to be understood, however, as holding that the defendant thus charged and under the circumstances shown would not be entitled to an instruction to the effect that he should not be convicted unless the jury should find and believe from the evidence beyond a reasonable doubt that such defendant voted for or approved the illegal claims with knowledge of the facts rendering same illegal.

As to counts 8 and 9, the evidence wholly fails to connect defendant Raedeker with the transactions charged. As to count No. 8, the uncontradicted evidence shows that the arrangements for hiring or renting the tractor and pile driver belonging to the county to J. L. Nugent and permitting him to take same out of the county and use them in work performed for the Tidal Refining Company, were made between J. L. Nugent and Mr. Thatcher, the chairman of the

board. True the evidence shows the conversation with Thatcher was in the room where the commissioners were in session, but no contract was made by the board and no record was made. J. L. Nugent was the only witness who testified as to the transaction, and his testimony was:

"Q. Mr. Nugent, before taking the pile driver and the tractor there, did you see the county commissioners? A. Well, I seen them. Q. Where were they at that time? A. They was in session. Q. Speak up. A. I say they was in session here. Q. In session? A. Yes, sir. Q. Did you go in where they were in session and have a conversation about taking that machinery over in Creek county? * * * A. I talked to Mr. Thatcher. By Mr. Springer: Q. In the presence of the other commissioners? A. They were there. Q. You may state whether or not you were given permission to move that property over into Creek county to do that work? * * * A. By Mr. Thatcher. Q. And that was in the presence of these other commissioners, you said? A. Yes, sir."

On cross-examination he testified:

"Q. You said, in answer to a question by counsel, that the other commissioners were in the county commissioners' room when you had your talk with Mr. Thatcher? A. Yes, sir. Q. Did you have any talk with Mr. Raedeker here about that tractor or that pile driver? A. No, sir. Q. Did Mr. Raedeker hear your talk with Mr. Thatcher? A. I don't know. Q. You had no permission from Mr. Raedeker to take that property over to Creek county, did you, Mr. Nugent? A. No, sir."

There is no evidence whatever that defendant Raedeker had anything to do with, or knew anything whatever about the transaction. The same is true with reference to count No. 9 wherein defendant is charged with renting certain machinery belonging to the county to one Hert, and furnishing a driver therefor, except that the transaction in that case was between Hert and Commissioner Holbrook. E. R. Hert testified with reference to that transaction as follows:

"Q. With whom did you make that arrangement, Mr. Hert? A. Mr. Holbrook. Q. He is the only one you had that arrangement with? A. Yes, sir."

The evidence wholly fails to connect defendant Raedeker with either of these transactions and the rule announced in Myers et al. v. State, supra, as to the individual responsibility of each member of the board of county commissioners has particular application as to the transactions involved in counts 8 and 9.

We are asked to hold as a matter of law that a contract of this nature made by one member of the board of county commissioners is the contract of all and that each member is responsible therefor whether he participated in the transaction or not. This we cannot do. No contract or agreement of any kind, whether one allowed by law or not, made by one member of the board of county commissioners alone is binding upon the county, and neither the county nor any other member of the board is bound thereby or responsible therefor. Certainly a contract or agreement not within the law, if made by all or a majority of the board in regular session would not be of any force or effect if made by one member alone. The other members would not be responsible unless they consented thereto, and certainly not if they knew nothing whatever about the transaction.

There was therefore no competent evidence whatever tending to establish the allegations of either count 8 or count 9, as against defendant Raedeker. Thatcher may have been guilty of malfeasance in office on account of the transaction involved in count 8, and the same as to Commissioner Holbrook as to count 9, but defendant Raedeker was not shown to be responsible in any way in either, and it is not shown that he had any knowledge whatever of either transaction. It was entirely proper, on account of total lack of evidence to sustain either, for the court to withdraw count 8 and count 9 from the consideration of the jury and direct a verdict of not guilty as to each of said counts.

The judgment of the trial court should be, and is hereby, affirmed in all things except as to counts 4, 5, 6 and 7, and is reversed and remanded as to said counts, with directions to reinstate the cause as to said counts 4 to 7, inclusive, of the accusation, and for further proceedings in accord with the views herein expressed.

HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. KORNEGAY, J., concurs in reversal, dissents as to affirmance. McNEILL, J., dissents. LESTER, C. J., and CLARK, V. C. J., absent.

McNEILL, J. (dissenting). I dissent from the views expressed in the majority opinion in reference to the charges of nepotism. The defendant, J. H. Raedeker, a member of the board of county commissioners of Payne county, Okla., was tried for removal from office under an accusation presented by a grand jury of said county, the specific cause for removal being willful maladministration. The accusation specifically charges in its separate counts that the defendants, Ed. T. Thatcher, A. C. Holbrook and J. H. Raedeker, while acting as county commissioners

of Payne county, Okla., in regular session, did then and there willfully, knowingly, and wrongfully authorize and vote to authorize the drawing of certain warrants of Payne county for the payment out of the county highway fund of said county for road work done by Roy Clark; that Roy Clark had theretofore been appointed and employed by the board of county commissioners of Payne county, the same being then and there composed of the above defendants, to work regularly and continuously upon the public roads of Payne county, for said county, which fact was then and there well known to said commissioners and each of them, and which warrants said commissioners authorized and voted to authorize to be drawn and issued to said Roy Clark as payee for the purpose of paying the salary and wages of the said Roy Clark; that the said Roy Clark was then and there, and at all times mentioned in this accusation, related to the said A. C. Holbrook within the 3rd degree of affinity, to wit, he being a brother-in-law of the said A. C. Holbrook, and J. H. Raedeker then and there, and at all times mentioned in this accusation, well knew, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state of Oklahoma.

Section 5825, C. O. S. 1921, provides that claims filed against the county shall be filed with the county clerk five days before the first day of meeting of the county commissioners, which accounts shall be regularly numbered in the order of filing and placed on the calendar by the county clerk for public inspection and convenience. The same shall thereafter, under the provisions of section 5827, C. O. S. 1921, be recorded on the county clerk's calendar of claims. Under section 5829, C. O. S. 1921, the county commissioners shall take up said calendar of claims and pass upon each of said claims and the clerk shall note their action on said calendar and also indorse the same on the claim so filed, giving the date when the same was acted upon and if allowed, on what fund the same was allowed. Under section 5830, C. O. S. 1921, it is the duty of the county clerk to transcribe said calendar showing the action of said commissioners on the various claims so filed and acted upon into a book to be known as the "Record of Claims Allowed Against ____ County."

There is no evidence showing that said defendant ever voted for the passage and allowance of any claim growing out of the charges of nepotism filed against him. The majority opinion infers that there is a presumption against the official acts of said defendant in that the claims mentioned in the accusation were allowed by the board of county commissioners of said county, and that the record does not show a negative vote on the part of the defendant, Raedeker. The statute does not require the recording of a negative vote on the part of any member in the allowance or rejection of any claim. This record is to be kept by the county clerk, and not by a commissioner. It is settled law that an officer is presumed to perform his duty in a lawful manner, and that as such officer he will do his duty. In the absence of clear proof to the contrary, this court has refused to hold that an officer did not do his official duty imposed upon him by law. See City of Sulphur v. State ex rel. Lankford, 62 Okla. 312, 162 P. 744; Board of Com'rs, Garfield County, v. Field, 63 Okla. 80, 162 P. 733; Bonaparte v. Nelson, 142 Okla. 54, 285 P. 100.

There is no evidence that the defendant ever authorized or voted to authorize the payment of a single claim on which the charge of nepotism is based. The specific statutory cause for removal under section 2394, C. O. S. 1921, is willful maladministration and not maladministration. It was an essential element of the offense charged against said defendant that said defendant vote for the allowance of the claims in question. The absence of such proof is fatal as against a motion for a directed verdict. In the total absence of such proof, it is my opinion that the defendant was entitled to the real presumption properly to be indulged in, to wit, that the state had no competent evidence to show that the defendant voted for or authorized the allowance of any of said claims.

In Moore v. Adams, 26 Okla. 48, 108 P. 392, this court has said:

"When it lies within the power of a party to an action to produce evidence upon an issue, and he fails, the presumption follows that the evidence, if produced, would be unfavorable to the cause of such party."

So far as presumptions are concerned, the law imposes upon the defendant the faithful performance of his official duties. It can be presumed that he protested against the allowance of these claims, which he should have done, in the exercise of his duty, if the facts were shown to have existed as charged in the accusation. But the state was called upon to prove facts and not rest upon presumption. Where there are conflicting presumptions, the presumption which favors the innocence of the accused prevails. 16 C. J. 542.

It is my opinion that it was incumbent upon the state to prove the essential facts and circumstances necessary to constitute the

charges of nepotism against the defendant before it could establish willful maladministration. This it has failed to do. The defendant is presumed to be innocent of the crime charged against him, and this presumption abides with the defendant throughout the trial until it is established beyond a reasonable doubt by competent evidence that the defendant is guilty of the offense charged. The state did not meet this burden. The presumption that defendant did not do his official duty in voting against the allowance of the claims in question cannot be used as a substitute for proof. Maney v. Boise Title & Trust Co., 116 Okla. 202, 244 P. 170.

A presumption of a definite and material fact cannot furnish an inference of fact. Chamberlayne, The Modern Law of Evidence, section 1203.

The presumption indulged in by the majority opinion, in my opinion, is not sufficient to submit to a jury to prove willful maladministration as a ground for removal from office. Such a presumption cannot be extended so as to cover independent facts essential to establish the issue of defendant's removal from office. Appling v. State (Ark.) 128 S. W. 866, 28 L. R. A. (N. S.) 548.

In the instant case it was essential to prove the offense of nepotism charged against said defendant by competent evidence by showing that the defendant did vote for the allowance and payment of the claims out of which the aforesaid offense is based. The mere fact that the defendant was present at the time the commissioners authorized said payments is not sufficient. The official acts of the majority could not incriminate said defendant provided he did not vote for or authorize the payment of the claims in question. The removal of an officer from a public office is a solemn and serious matter and the offense charged should be proved by positive, material, and independent facts, and not upon a mere presumption. This would lead to untold confusion. In effect, this opinion places the burden of proof upon the defendant to prove that he is innocent of the offense with which he is charged. This is not consonant with established rules in the furtherance of justice. If said defendant did vote for the allowance of the questioned claims, the state should have introduced proof of such facts. If those positive facts did exist, the state should have offered such evidence to

the court and jury. On so serious a charge the state must prove willful maladministration beyond a reasonable doubt. It is difficult to conceive how proof of such a charge upon mere presumption can be held to be sufficient, when the law enjoins upon the state to prove the essential elements of its accusation beyond a reasonable doubt. It conflicts with presumptions of equal plausibility in the face of the presumption of innocence.

I think this principle is well illustrated in the case of U. S. v. Carr, 132 U. S. page 644, in which Mr. Chief Justice Fuller quotes with approval from Mr. Justice Strong, speaking for the court in the case of U. S. v. Ross, 92 U. S. 281-284:

"The presumption that public officers have done their duty, like the presumption of innocence, is undoubtedly a legal presumption; but it does not supply proof of a substantive fact. Best, in his Treatise on Evidence, sec. 300, says: 'The true principle intended to be asserted by the rule seems to be, that there is a general disposition in courts of justice to uphold judicial and other acts rather than to render them inoperative; and with this view, where there is general evidence of acts having been legally and regularly done, to dispense with proof of circumstances, strictly speaking, essential to the validity of those acts, and by which they were probably accompanied in most instances, although in others the assumption may rest on grounds of public policy.' Nowhere is the presumption held to be a substitute for proof of an independent and material fact."

The court, in my opinion, has applied an incorrect principle of law to the facts in this case. It was incumbent upon the state to prove the essential, independent material facts that said defendant voted for or authorized the payment of the claims in question. Presumption is not sufficient. From this record there is no presumption of fact or law that said defendant voted for or authorized the payment of said claims, because the record and the evidence does not show a negative vote. The judgment of the trial court in reference to directing a verdict on the counts involving charges of nepotism should be sustained.